PENNSYLVANIA COMPANY v. CLARK, ADMINISTRATOR.

[No. 23,858. Filed January 13, 1922.]

1. RAILROADS.—*Crossing Accidents.—Failure to Give Statutory Signals.—Evidence.*—In an action for death in a crossing accident, evidence that a number of persons who were near the crossing, in a situation to have heard the bell and whistle on the locomotive if the statutory signals were given, did not hear them, supports an inference that such signals were not given. p. 473.

2. RAILROADS.—*Crossing Accidents.—Contributory Negligence.—Evidence.*—In an action for death in a crossing accident, evi-

dence *held* such as to warrant an inference that decedent was guilty of contributory negligence.    p. 473.

3.    RAILROADS.—*Crossing Accidents.—Contributory Negligence.—* —*Presumptions.—Instructions.*—In an action for the death of a motorcyclist in a crossing accident, an instruction that, in the absence of evidence to the contrary, it is presumed that decedent exercised ordinary care, was error, since there is no such presumption; and where the evidence presented a direct issue of contributory negligence, such instruction was misleading and harmful.   (Cleveland, etc., R. Co. v. Wise [1917], 186 Ind. 316, disapproved in part.)    p. 474.

4.    RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Burden of Proof.—Instructions.*—In an action against a railroad company for the death of a motorcyclist in a collision on a highway crossing, an instruction that the burden of proof to establish that deceased did not exercise ordinary care was on the defendant, and that the failure to exercise such care "must be proved by a preponderance of the evidence on its part," was erroneous in requiring a preponderance of evidence on the part of defendant, it being only necessary to make out the defense of contributory negligence by a preponderance of all the evidence, by whomsoever introduced.    p. 476.

5.    DEATH.—*Action for Death of Minor.—Emancipation.—Burden of Proof.*—In an administrator's action for wrongful death, where the complaint alleged that decedent was a minor and that more than a year before his death he was emancipated by his parents, the burden of proof to establish emancipation was upon the plaintiff.    p. 477.

6.    DEATH.—*Action for Death of Minor.—Jury Questions. — Emancipation.*—In an action by an administrator for the wrongful death of a minor, whether decedent was emancipated *held,* under the evidence, a question for the jury.    p. 477.

7.    TRIAL.—*Instructions.—Invading Province of Jury.—Wrongful Death.—Action by Personal Representative.*—In an action by a personal representative for the death of a minor, where emancipation was a question for the jury the court erred and invaded the province of the jury by giving an instruction that when the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained the action, had he lived.    p. 477.

8.    DEATH.—*Action for Death of Minor Child.—Measure of Damages.—Contribution to Next of Kin.—Presumptions.—Instructions.*—In an administrator's action for the death of a minor, whether deceased would probably have continued throughout

his life to contribute to the support of his parents and brothers and sisters, was a question for the jury, and it was error for the court to give an instruction that "It may be presumed that his contribution to their support, if you find such to exist, would continue throughout his life," etc., there being no such presumption. p. 478.

9. DAMAGES.—*Basing on Evidence Improper for Consideration. —Instructions.*—In an action for wrongful death, a reference in an instruction to "all the evidence in the case" as the basis for an assessment of damages, was erroneous, where there was some evidence not proper to be considered in fixing the damages. p. 478.

From Starke Circuit Court; *William C. Pentecost,* Judge.

Action by Melvin Clark, administrator, against the Pennsylvania Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1399 Burns 1914, Acts 1901 p. 569.) *Reversed.*

*Leonard, Rose & Zollars,* for appellant.

*J. R. Beckett,* for appellee.

EWBANK, C. J.—Appellee recovered a judgment against the appellant for negligently causing the death of his decedent, who, on May 31, 1916, was struck by a passenger train running on appellant's double track railroad, at a street crossing in the town of Donaldson, while riding a motorcycle.

The undisputed evidence was that he was a minor, but lacked less than five months of being twenty-one years old. There was evidence tending to prove and from which the jury might have inferred that a freight train had just passed going east, when the deceased reached the crossing; that he approached the crossing from the east over a highway that came toward the railroad track at an acute angle of twenty or thirty degrees until it turned south toward the crossing when within forty or fifty feet from the track; that between

this highway and the track, east of the crossing, were a succession of buildings and structures, including a passenger station, a freight house, a pickle salting station, and a stockyard, and that trees and bushes grew between them on which there were leaves at the time; that these hid the track from decedent as he approached, unless for momentary glimpses, until he was within eighteen feet from the track; that from this point to where the train struck him he tried to stop his motorcycle; that a passenger train, half an hour behind time, ran west on the north track at the rate of fifty to sixty miles an hour over the crossing, without ringing the bell or sounding the whistle, and struck the motorcycle and rider, and thereby killed plaintiff's decedent, and that if the statutory signals for the crossing had been given he could have heard them; and that decedent's father had emancipated him.

Evidence that half a dozen persons who were near the crossing, in a situation to have heard the bell and whistle if the statutory signals were given, did

1. not hear them, supports an inference that they were not given. *Grand Trunk, etc., R. Co.* v. *Reynolds* (1910), 175 Ind. 161, 169, 170, 92 N. E. 733, 93 N. E. 850.

But there was also much evidence from which, if the jury believed it they would have the right to draw an inference that appellee's decedent was guilty of

2. contributory negligence. Witnesses testified that the whistle was blown four times at the statutory distance from the crossing, and that the bell rang continuously; that the train was running only thirty-five miles an hour, and was not behind time; that the deceased was familiar with the crossing, and had passed over it many times; that the track for half a mile east of the crossing was on an embankment eleven feet higher than the surrounding country; that except where

four buildings, at distances of 138, 200, 490 and 1,050 feet, respectively, from the crossing came directly between him and the train as he rode along, he was in plain view of the track and of the train as he rode west nearly parallel with the course of the track during all the time that the train was running 2,000 feet; that he was within a few hundred feet of the track some distance east of the crossing when the whistle blew, and that he rode "very fast" from there, in the same direction that the train was running, to the crossing and upon the track without looking in the direction of the train; that he was riding a new motorcycle which he had purchased three days before; that after he passed the west end of the passenger station, 138 feet east of the crossing, until his motorcycle had run that distance west and had run fifty feet south to the track, nothing obscured his view of that part of the track west of the building. And if the jury believed appellant's witnesses they might have drawn an inference therefrom that the train was not running more than three or four times as fast as the motorcycle, and that from the time when the deceased was forty feet from the track, after he had turned south toward the crossing, the locomotive was west of the station in plain view across an open, level space, entirely free from obstructions, but that the deceased rode upon the track immediately in front the train without looking toward it.

The trial court gave certain instructions, each of which was duly excepted to and presented for review by a motion for a new trial by the appellant, and upon the overruling of this motion appellant excepted, and has assigned the ruling as error. Number nine of these instructions was as follows: "9. In the absence of evidence to the contrary, the presumption is that a person killed by a collision with a train at a railroad crossing exercised all that care that would

be exercised by an ordinarily prudent person under like circumstances, and the plaintiff need not affirmatively prove that his decedent exercised ordinary care for his own safety. The burden of proof that such person did not exercise ordinary care is on the defendant railroad company and must be proved by a preponderance of the evidence on its part." There is no presumption on the subject referred to. *City of Indianapolis* v. *Keeley* (1906), 167 Ind. 516, 525, 79 N. E. 499; *Grand Trunk, etc., R. Co.* v. *Reynolds, supra; Chicago, etc., R. Co.* v. *Van Stone* (1918), 68 Ind. App. 47, 51, 119 N. E. 874; *Harmon* v. *Foran* (1911), 48 Ind. App. 262, 269, 270, 94 N. E. 1050, 95 N. E. 597.

If no evidence tending to prove contributory negligence were introduced the jury could not find that the negligence of the injured person contributed to cause his injury, and the inaccuracy of statement in the opening clause of this instruction might then be harmless. But as applied to evidence presenting a direct issue of contributory negligence, and especially as given in connection with an assertion, which the jury would necessarily understand as applicable to the facts of the case on trial, that "the plaintiff need not affirmatively prove that his decedent exercised ordinary care for his own safety," it was misleading and harmful. Except so far as the court held the instruction then under consideration to be harmless as applied to cases where "there is no evidence on the subject of contributory negligence," the statement found in *Cleveland, etc., R. Co.* v. *Wise* (1917), 186 Ind. 316, 116 N. E. 299, purports to be based wholly upon the earlier case of *Pittsburgh, etc., R. Co.* v. *Reed* (1905), 36 Ind. App. 67, 75 N. E. 50, which had been expressly overruled by both the Supreme and Appellate Courts several years before the Wise case was decided. *Grand Trunk, etc., R. Co.* v. *Reynolds, supra; Harmon* v. *Foran, supra.*

But in the instant case, the evidence being what it was, no instruction at all should have been given assuming to state what would be the law in the absence of any evidence of contributory negligence, and the language complained of was misleading.   Except so far as *Cleveland, etc., R. Co.* v. *Wise, supra,* held the error in giving the instructions then under consideration to have been harmless, its language is disapproved.

The part of this instruction which told the jury that the burden of proof to establish that the deceased did not exercise ordinary care was on the appellant company, "and must be proved by a preponderance of the evidence on its part," was erroneous in requiring a preponderance of evidence "on its part." Evidence tending to show lack of care for his own safety on the part of the deceased, if offered by the appellee would have the same probative value to establish contributory negligence as evidence introduced by appellant "on its part," and it was only necessary to make out this defense by a preponderance of all the evidence, by whomsoever introduced.  *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 88 N. E. 612.

The complaint alleged that appellee's decedent was a minor and that "more than a year before his death he was emancipated" by his parents.   Appellant answered by a denial.   The undisputed evidence was that at the time of his death he was twenty years, seven months and eight days old.   Appellee testified that he was the father of the deceased, and testified to certain facts tending to show that the deceased had been emancipated two years before.   But there was also evidence that in the intervening years he had only worked away from home for four persons, and that he worked for one of them two months, for another two weeks, and for each of the others three or four weeks, which would be a

total of less than five months; that he gave money to his father out of his wages, and brought home groceries; that he lived at home when not working out, and cut wood and hauled manure, and hoed in the garden, and at times worked for his father some months; that his father kept no account of the work he did at home; that when he worked away from home he came home each week end; that his father gave him money, such as the price of smoking tobacco; that "when he came home he handed over money" to his father.

Under the issues joined appellee had the burden of proof to establish that his decedent had been emancipated, and under this evidence appellant was entitled to have the question of his emancipation submitted to the jury. *Berry, Admr.,* v. *Louisville, etc., R. Co.* (1891), 128 Ind. 484, 28 N. E. 182.

The court gave an instruction as follows: "13. The court instructs the jury that when the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury for the same act or omission." This instruction invaded the province of the jury. It could only be correct in case there was no issue to be decided as to the person for whose death the action was brought being a minor who had been emancipated. But in this case there was such an issue, and the evidence in relation to that issue was conflicting.

In addition to the evidence above set out, including what tended to prove that appellee's decedent was less than twenty-one years old but had been emancipated, there was evidence that he was the oldest of a family of nine children, ranging in ages down to the baby, two

years old; that in the last year of his life he had owned two different motorcycles, and had sold the first one and bought a "new one" for $150, of which he paid $45 in cash, three days before his death; that in two years before his death and since his alleged "emancipation" he had given his father about $100, and had bought groceries for the family at times, and waists and gloves for the oldest sister, and clothes and shoes for the little sisters, and clothes for a little brother, all of an undisclosed value; that his father had recently moved from another farm upon the one where he then lived, and was in debt. And the court had judicial knowledge that the life expectancy of a boy at twenty years of age exceeds forty years.

The court gave an instruction (No. 14) on the subject of damages, in which it stated that in determining the amount of damages sustained by his next

8. of kin on account of the death of appellee's decedent, "It may be presumed that his contribution to their support, if you find such to exist, would continue throughout his life, and the amount of their loss by his death should be based on such contributions for their support and comfort in life by reason of pecuniary help."

This was error. There is no such presumption. Whether the deceased would probably have continued throughout his life to contribute to the support of his parents and brothers and sisters, was a question for the jury, in fixing the amount of damages which the next of kin sustained by his death. American M. C. Co. v. Robbins (1913), 181 Ind. 417, 422, 103 N. E. 641.

A reference in this instruction to "all the evidence in the case" as the basis for an assessment of damages was not strictly accurate. There was some evidence not proper to be considered in fixing the

9. damages. But whether this error was harmless,

as is insisted by the appellee, need not be considered, since the judgment must be reversed because of the errors pointed out above.

The judgment is reversed with directions to sustain appellant's motion for a new trial.