THE PENNSYLVANIA RAILROAD COMPANY *v.* RIZZO, ADMX.

[No. 17,827. Filed May 24, 1949. Rehearing denied October 5, 1949. Transfer denied November 15, 1949.]

506

On Petition for Rehearing. *Petition denied.*

*George W. Henley,* of Bloomington; *Carl T. Reis, John M. Miller, George C. Forrey III, Edward B. Raub, Jr.,* and *Jacob S. White,* all of Indianapolis, for appellant.

*Samuel E. Garrison* and *Othniel Hitch,* both of Indianapolis; and *Robert G. Miller,* of Bloomington, for appellee.

MARTIN, J.—The appellee's decedent was killed when the automobile in which he was riding was struck by appellant's train at a grade crossing known as the German Church Road about three miles east of the city limits of Indianapolis, Indiana.

This is an action for damages alleged to have been caused by the negligent conduct of appellant in the operation of its train. There was judgment for the appellee.

The error assigned here is the overruling of appellant's motion for a new trial. Specifications of the motion question the sufficiency of the evidence, the legality of the verdict, the giving and refusing to give of certain instructions.

We are called upon to say whether the evidence as disclosed by the record is sufficient to sustain the verdict of the jury and the ruling of the lower court on the motion for a new trial. In that consideration, we are not concerned with the conflicting evidence or with the weight thereof, but only in determining whether there is an entire absence of proof of any of the facts necessary to be established.

The evidence disclosed that on the 24th day of October, 1945, about 7:30 a.m., the decedent was riding in an automobile driven by one Donald Hurst, who was

employed by the deceased to assist him in the roofing business, and that they were on their way to do some roofing work at the time of the accident.

The automobile was going south on the German Church Road and was moving at a low rate of speed, 10 to 20 miles an hour. As the automobile approached the railroad crossing, it apparently slowed down but never stopped and was struck by the train of the appellant which was going east on the south set of tracks of the appellant's double track railroad. The train was moving 70 miles per hour. The weather was clear and dry except for some overcast sky. The physical facts regarding the view to the west as one rode south on the German Church Road are shown by photographs, appellant's Exhibits A, B, C, and D, and by witness A. O. Rucker who was the only witness who made measurements and whose testimony is uncontradicted.

The measurements and the photographs were taken the day of the accident. The witness testified that when he was 573 feet north of the north rail of the eastbound track he could see the railroad track for a distance of 1950 feet west of the crossing. This view remained the same as he proceeded south until he was 45 feet north of said north rail. For a distance of 18 feet from said 45-foot point to a point 27 feet north of said north rail, the wheels of a train going east on the south set of tracks were obscured by a slight rise of terrain when the railroad cars were in the space between 105 feet west of the crossing and 793 feet west of the crossing, but while in that space of 18 feet all of the railroad cars except the wheels could be seen. Going south from the point 27 feet north of said north rail, the view to the west was unobscured for 2 or 2½ miles. There were no trees, buildings, or shrubbery that would obstruct the view along the

west side of the German Church Road or in the field west of the German Church Road or north of the railroad track or along the north edge of the railroad track bordering the field. There were telephone poles along the railroad right-of-way on the north side of the tracks and a woven wire farm field fence and post fencing in the field to the west of the German Church Road and north of the railroad right-of-way, however, these did not obstruct the view of a train approaching. The German Church Road was running in a straight north and south direction at said grade crossing and the railroad tracks were straight running east and west and the terrain was generally level except the railroad tracks would dip to some extent a quarter of a mile west of the crossing.

The first and second allegations of negligence made by the appellee were as follows:

"By then and there driving and operating its said train when and while approaching said public highway without giving any warning sign by whistle or otherwise, when said defendant was a distance of not more than one hundred rods and not less than eighty rods from said crossing of said track and said public highway; by then and there driving and operating its said passenger train negligently toward, upon, and across said public highway at a reckless and dangerous speed, to-wit, eighty or more miles per hour and behind schedule."

The failure to give statutory signals, as alleged in the first assignment, is negligence *per se.*

In the second assignment of negligence the appellee relied upon excessive speed. The evidence relative to the giving of statutory signals was given by the engineer, who testified that he gave the regular statutory blast of the whistle and had turned on the auto-

matic bell on leaving Indianapolis. He was corroborated by the fireman who said that the whistle blew and the fireman stated that he was riding inside the cab and in open country where this accident occurred, you could not hear the bell ring while in the cab, and further testified that he did not hear the bell. There was one other witness who testified, one Tom Robling, a boy who lived in a house near the crossing and gave the following evidence.

"Q. Did you hear any whistle prior to the thud?

"A. Well, the thud was the first thing I remember hearing.

"Q. Did you hear any whistle immediately prior to the collision?

"A. I don't remember, no."

CROSS EXAMINATION

"Q. And you wouldn't say now whether at the time of this accident the train whistle blew or you wouldn't say it didn't blow would you?

"A. That's right."

In considering the question presented we may not weigh the testimony of one witness against the conflicting testimony of another, nor may we weigh conflicting portions of the testimony of the same witness. If the same witness makes contradictory assertions, we will not undertake to determine which of the assertions are true, that being a question for the jury. On an appeal, when the sufficiency of the evidence to sustain a verdict is questioned, the court must consider only the evidence most favorable to appellee. *Hummel* v. *New York Cent. R. Co.* (1946), 117 Ind. App. 22, 66 N. E. 2d 901; *Lincoln Nat. Bank & Trust Co.* v. *Parker* (1941), 110 Ind. App.

1, 34 N. E. 2d 190, 37 N. E. 2d 5; *Snider* v. *Truex* (1943), 222 Ind. 18, 51 N. E. 2d 477.

The evidence that will support a finding must be substantial evidence. It must be evidence which has probative value. *Hummel* v. *New York Cent. R. Co., supra; Hirst* v. *Chevrolet Muncie Division, etc.* (1941), 110 Ind. App. 22, 33 N. E. 2d 773, 37 N. E. 2d 3.

The testimony of one who was near a crossing and in a situation to have heard the whistle, that he did not hear it, is generally sufficient to support the inference that such a warning signal was not given. *Hummel* v. *New York Cent. R. Co., supra; Pennsylvania Co.* v. *Clark, Admr.* (1922), 191 Ind. 470, 133 N. E. 588.

We are of the opinion, however, that the evidence of Tom Robling was not sufficient to support that inference in this case.

We are, therefore, of the opinion that, discounting entirely the testimony of the engineer and the fireman, and viewing the testimony of Tom Robling in the light most favorable to the appellee, a finding that the whistle was not blown could be the result only of speculation, surmise and conjecture.

Speed of itself never constitutes negligence in the absence of a limiting statute or ordinance. *New York Central R. Co.* v. *Powell* (1942), 221 Ind. 321, 47 N. E. 2d 615.

We must reach the same conclusion as the court did in *Union Traction Co.* v. *Howard, Admr.* (1910), 173 Ind. 335, 340, 90 N. E. 764, 765 in which it said:

> "We think there is but one act of negligence alleged; that it requires the concurrence of a high and dangerous rate of speed, coupled or concurring with a failure to give warning, to constitute the negligence charged."

See, also, *Brooks* v. *Muncie, etc., Traction Co.* (1911), 176 Ind. 298, 95 N. E. 1006; *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740.

The third allegation of negligence charged in said complaint is as follows:

> "By then and there driving and operating its said passenger train at a perilous and hazardous crossing without then and there having installed and working, gates or a watchman at said place to warn said travelers and said decedent of the approach of said passenger train aforesaid."

The fourth allegation of negligence is as follows:

> "Plaintiff further avers that at all times mentioned herein said defendant was operating said passenger train carelessly and negligently and without proper or sufficient warning whistle or gong or bell installed at said crossing to warn said decedent of the approach of said passenger train, and that said crossing aforesaid is and was at said time an exceptionally deceptive, hazardous and perilous crossing as hereinbefore alleged, and that said public highway is close to a large and populous city and traffic on said highway is unusually heavy; that there is in common use by steam railroads certain well known and well recognized automatic or mechanical devices of an electrical or automatic operation in the nature of flash signals, electric bells and gates, which said signals, electric bells and gates, warn the said travelers of the approach of said train, and that no such device of any kind or character as herein described was placed at said crossing by said defendant at said time; that all such flash signals, bells, gongs or gates could have been installed and operated without unreasonable expense and that if such warning signals had been installed, the collision herein described would have been avoided."

There was a general allegation of obstructions to the view at said crossing. The evidence showed that there

were no obstructions to the view or hazards at said crossing and the only evidence as to the amount of travel on said highway was by one witness to the effect that there was more travel on this particular road than some other country roads. According to the evidence, 300 feet north of the crossing there was a disc-shaped sign with letters "RR" thereon, and at the crossing there were the standard cross-arm railroad signs, one facing north and one facing south and that there were no electric bells or gongs or watchman at said crossing. The failure to provide a bell or watchman or other mechanical devices of warning at a highway crossing in the country to warn travelers could only be actionable negligence if it violated some duty imposed by law on the railroad company, and no positive duty to install such warnings is imposed by the law of Indiana except where an order to that effect has been made by the Public Service Commission or other proper authority. *Terre Haute, etc., Traction Co.* v. *Phillips, supra.*

The fifth allegation of negligence is as follows:

"By then and there negligently driving and operating its said passenger train at said perilous and hazardous crossing without brakes sufficient to stop said passenger train after the fireman on said passenger train saw said automobile before said automobile was hit by said train."

The evidence clearly showed that the brakes were in proper working order and that they were at the time of the accident properly working and there was insufficient time for the train to stop after the fireman saw that the automobile proceeded upon said crossing without stopping to avoid the accident.

The sixth allegation of negligence is as follows:

"By then and there negligently driving and operating its said passenger train without said fireman or engineer observing the crossing on said German Church Road or having a full view of said crossing by reason of a passing train in time to avoid a collision."

This issue was taken away from the jury by an instruction of the court.

The evidence discloses that a person 573 feet from the crossing and approaching it from the north could see railroad tracks looking southwest for a distance of 1950 feet and could see an approaching train for a greater distance. Without detailing all the evidence, it is sufficient to say that we find no evidence in this record which would, in our opinion, justify the jury in finding that this crossing presented such a situation, that the speed at which the passenger train was being run, was incompatible with appellant's duty to exercise reasonable care for the safety of travelers on the highway.

The verdict of the jury is not sustained by sufficient evidence.

Questions raised regarding instructions are not likely to arise on a retrial of this cause.

Judgment reversed and cause remanded with instructions to sustain appellant's motion for a new trial.

Draper, J., and Bowen, C. J., not participating.

NOTE.—Reported in 86 N. E. 2d 91.


## PETITION FOR REHEARING

MARTIN, J.—The appellee in its petition for rehearing has made the point that the cross-arm warning sign at the crossing did not have the word "two" on

it; that the railroad has a double track at the crossing; and that there was no warning sign showing that there was more than one track.

No issue was tendered by the amended complaint on this subject matter. The case was not tried on the theory that it was an issue.

The word "two" on the sign, or the failure to have the word "two" on the sign would only become material in this case in the event there was a train going west and passing the train going east at or near the scene of the accident. Not only would the lack of the word "two" on the sign have no causal bearing on the accident but it will be noted that the court withdrew the issue of the passing train from the consideration of the jury by an instruction tendered by the appellant to which the appellee did not object.

The appellee's petition for rehearing is denied.

NOTE.—Petition for rehearing reported in 87 N. E. 2d 885.