CALLAHAN, ADMINISTRATOR OF ESTATE OF PATTERSON
*v.* NEW YORK CENTRAL RAILROAD COMPANY.

[No. 18,613. Filed March 25, 1955. Rehearing denied May 9, 1955. Transfer denied October 10, 1955.]

632

*Kenneth C. Miller,* of Brazil, *Robert J. McPeak,* and *Hansford C. Mann,* of Terre Haute, for appellant.

*Harvey L. Fisher,* of Brazil, and *Jerdie D. Lewis,* of Terre Haute, for appellee.

KENDALL, J.—This is an action for wrongful death of appellant's decedent, Harry Patterson, on January 13, 1950, at approximately 11:00 a.m., at Haythorne Street Crossing, east of Terre Haute, Indiana.

Appellant contends that the decedent was riding in a truck operated by Kendall Hooker while appellee contends that there was no evidence whether Mr. Hooker was driving or not. Other occupants of the truck were Mrs. Hooker and their two children. All five occupants were killed.

The truck in which the decedent was an occupant was proceeding in a westerly direction approaching Haythorne Street Crossing. The appellee's train tracks were dual and ran generally in a northeasterly and southwesterly direction. Approximately one-half mile southwest of Haythorne Street Crossing is another railroad crossing known as Fruitridge Crossing. Fruitridge Road runs in a northerly and southerly direction.

Appellant's amended complaint alleges four acts of negligence; however, on appeal, appellant relies upon the following two specific acts:

(a) In running the train across Haythorne Avenue at the dangerous rate of speed of seventy-eight miles-per-hour without sounding any whistle or bell or warning of its approach;

(f) In permitting bushes, vines and undergrowth on its right-of-way to obstruct the view of persons traveling west, by reason of the fact that the street east of the crossing is approximately ten feet lower than the tracks.

The appellee filed appropriate answers, the second paragraph of which alleged that the sole proximate cause of the collision was the negligence of the truck driver. The cause was tried by jury. At the close of all the evidence, the court sustained appellee's motion for a directed verdict, to which appellant made timely objections. Judgment was rendered upon the verdict of the jury in favor of appellee.

Motion for new trial was filed specifying that the verdict of the jury was contrary to law; that the court erred in sustaining appellee's motion for a directed verdict made at the close of the evidence and that the court erred in giving to the jury a peremptory instruction directing the jury to return a verdict in appellee's favor.

The assignment of error is the overruling of appellant's motion for new trial.

We are therefore confronted with the question, did the trial court err in sustaining the motion for a peremptory instruction in favor of appellee at the close of all the evidence?

Courts of appeal have frequently been called upon to determine when a trial court may properly give the jury such an instruction. The general rule now recognized is that a peremptory instruction may be given when there is a total absence of evidence or legitimate inferences in favor of the plaintiff upon

an essential issue or where the evidence is without conflict and is susceptible of but one inference and that inference is in favor of the defendant. *Whitaker* v. *Borntrager* (1954), 233 Ind. 678, 122 N. E. 2d 734, and cases cited. It is a well-recognized rule in determining whether a peremptory instruction should be given, the court must accept as true all facts which the evidence tends to prove and draw against the party requesting such instruction, all inferences which the jury might reasonably draw. *Holtz* v. *Elgin, etc., Ry. Co.* (1951), 121 Ind. App. 175, 98 N. E. 2d 245; *Chacker* v. *Marcus* (1949), (R. D. 1950), 119 Ind. App. 672, 86 N. E. 2d 708; *Whitaker* v. *Borntrager, supra*. Likewise, when there is some evidence or legitimate inferences supporting each material allegation of the complaint, the court will not weigh the conflicting evidence or inferences but will consider only the evidence and inferences that are most favorable to the party against whom the peremptory verdict is directed. *Jackson Hill Coal, etc., Co.* v. *Bales* (1915), 183 Ind. 276, 108 N. E. 962; *Whitaker* v. *Borntrager, supra*.

With these general principles of law in mind, we proceed to consider the complaint, the evidence and inference, if any, in support of appellee's motion.

To support the acts of negligence alleged, appellant's evidence showed that John P. Callahan was driving north on Fruitridge Avenue when he first saw the train approaching Haythorne Crossing; that he likewise saw the truck approaching the crossing from the east; that the train was going seventy-five to eighty miles-per-hour and the truck was going fifteen miles-per-hour; that Fruitridge Crossing was approximately one-half mile southwest of Haythorne Crossing; that the train traveled over half of the distance between the two crossings before Mr. Callahan saw sparks flying from

the wheels which was when the train applied the brakes. In regard to whether or not Mr. Callahan heard the train whistle, he was asked the following questions:

"Q: Did this train whistle for the crossing, Mr. Callahan?
A: No sir.
Q: Were there any bells ringing at any time?
A: No sir.
Q: You didn't hear any bells at any time?
A: No sir.
Q: You were observing this train, were you?
A: Yes, sir.

. . .

Q: Did you see any steam emitting from the top of the engine as if the whistle was blowing?
A: No sir."

On cross examination, the following questions were asked and answers given:

"Q: You were driving north approaching the crossing. Were your windows up or down?
A: Open, sir.
Q: The front windows?
A: The two little ventilators were open, and Mr. Knipmeyer's window was. I don't know how much it was open."

There was evidence that the train's lights were on when approaching the crossing; that approximately fifteen minutes before the accident, the truck involved had pulled into a service station for gas, at which time Mr. Hooker was driving. The decedent was sitting in the truck opposite the driver, next to the door, holding the bigger of the two Hooker children, while Mrs. Hooker was holding the other one. Mr. Knipmeyer testified he saw the accident occur and that the train stopped half-way between the two crossings and that the window nearest him was down.

On direct examination, the following questions and answers were given by Mr. Knipmeyer:

"Q: Did you hear the crash?
A: No, sir.
Q: Did you hear the whistle blow?
A: No, sir."

On cross examination, in respect to the view of the train tracks to the northeast, Mr. Knipmeyer testified as follows:

"Q: Isn't it a fact, Mr. Knipmeyer, that you can stand at a point 300 feet east of the tracks at Haythorne crossing and look up to the northeast and see the rails for at least a quarter of a mile or so?
A: From 300 to 400 feet you can see the rails on the track.
Q: And isn't it true that within all points several hundred feet of the crossing to the northeast is unobstructed for the traveler coming from the east going west?
A: You can still see.
Q: And I will ask you if it isn't true that anyone on January 13, 1950, the day this happened, who was traveling from the east going west on Haythorne from 300 feet east of the approach of that crossing see for a distance of a half mile or over?
A: No, not no half mile.
Q: For a quarter of a mile?
A: Maybe he would be able to see that far."

The appellant introduced in evidence over objection of appellee the statement of James L. Farrell, the locomotive fireman, who was not a witness in the case. We do not know on what theory the exhibit was admitted into evidence; however, the appellee has not assigned any cross errors.

The exhibit recited that Mr. Farrell first saw the truck when it was about seventy-five yards east of the

east dual track which was doing about twenty-five miles-per-hour and the train was going eighty-five miles-per-hour; that the engine man was sounding the whistle and had been sounding it a long ways east of the crossing; that the whistle was still sounding when the truck was struck; that the engine bell may have been ringing but from where he was seated in the cab, he did not hear it.

There was definite testimony on the part of Mr. Callahan that the train did not whistle for the crossing. Mr. Knipmeyer testified he did not hear any bell, and neither did the fireman. So far as the evidence shows, no witness heard the sounding of a bell of the train as it approached the crossing.

Negative evidence may or may not have the same probative value as positive evidence; however, it is sometimes the only method of proving the failure of a railway company to give signals and in such a case as this, in view of the testimony of Mr. Knipmeyer and Mr. Farrell, it constitutes some evidence which the jury may properly weigh and consider in determining whether the signals were given.

From this type of evidence and the inferences a jury may legitimately draw therefrom, are proper matters for it to consider in determining the alleged acts of negligence. The latest pronouncement of this rule of law by our Supreme Court is *Whitaker* v. *Borntrager*, *supra*. The facts in the instant case are stronger than those of the Whitaker case, *supra*. The appellee argues that since some of the appellant's witnesses were one-half mile from the place of collision, that such evidence has no probative value and cites numerous authorities, among which is *Hummel* v. *New York Cent. R. Co.* (1946), 117 Ind. App. 22, 66 N. E. 2d 901, which accident involved the identical crossing as in

this case and which this court upheld the trial court in the giving of a peremptory instruction to the jury; however, the evidence of the Hummel case, *supra,* is distinguishable from the evidence herein-presented, for in that case Mrs. Callecod testified she did not hear the whistle; that she never heard the whistle; that she had gotten accustomed to trains and never noticed them; that she was accustomed to it and she never noticed the train whistle; that it could have whistled. She further stated that she did not mean to say it didn't whistle, it could have whistled because she didn't notice it.

The Hummel case, *supra,* approves the general rule that the testimony of one who is near a crossing and in a situation to have heard the whistle, that he did not hear it, is generally sufficient to support the inference that such a warning signal was not given. *Pennsylvania Co. v. Clark, Admr.* (1921), 191 Ind. 470, 133 N. E. 588.

Appellee further contends that even if the charges of negligence were established by substantial evidence having probative value, that the evidence in this case shows contributory negligence of decedent as a matter of law in view of the testimony of the apparent clear view of the railroad track to the northeast, being the direction from which the train was traveling. Contributory negligence is of course a proper defense, the burden of proof of which rested upon the appellee. So far as the actual testimony is concerned, this court cannot tell who was driving the truck at the time of the collision; whether the decedent was a guest or not; whether it was a joint enterprise between Hooker and the decedent, or really what the true facts were. We are in full accord with the general principle regarding the duties devolving upon persons traveling on public highways when approaching and

entering a railroad crossing with reference to his own safety, and that travelers on a public highway, in attempting to pass over railroad crossings are required to look and listen for the approach of trains. Under the facts presented to this court in this case, and, in view of appellee's burden of proof to prove contributory negligence, it was a question of fact for the jury to determine whether or not the appellee had sustained the burden of proof of such contributory negligence.

It cannot be said that reasonable minds might not have differed on the question of whether appellant's decedent exercised due care to avoid the collision regardless of whether he was the driver or guest. On the other hand, if the question of contributory negligence on the part of appellant's decedent had been submitted to the jury and the jury had found for the appellant, this court could not say as a matter of law that the decedent was guilty of contributory negligence and that the verdict of the jury should be set aside.

The appellant's decedent had a right to assume that the appellee's train would give the statutory signals, warning him or other travelers as they approached Haythorne Crossing of the approach of said train. Sec. 55-1243, Burns' 1951 Repl. The failure to give such signals not only is negligence *per se* on the part of appellee, but is a fact for the jury to consider, together with all pertinent facts in determining the question of whether appellant's decedent was guilty of contributory negligence as he approached the crossing, and prior to the time he saw, or could have seen, the approach of the train. Under all the facts, it was a question of fact for the jury as to whether appellant's decedent was guilty of contributory negligence in the manner of approaching the crossing, be he the driver or the guest.

Since there is some evidence and legitimate inferences supporting each of the material averments of the complaint, it was error to give the peremptory instruction.

Judgment reversed with instructions to sustain appellant's motion for new trial.

NOTE.—Reported in 125 N. E. 2d 263.