Eldridge SIMON, Jr., b/n/f Pauline Simon, Plaintiff-Appellee,

v.

NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellant.

Pauline SIMON, Plaintiff-Appellee,

v.

NEW YORK CENTRAL RAILROAD COMPANY, Defendant-Appellant.

Nos. 14940, 14941.

United States Court of Appeals
Seventh Circuit.

Oct. 5, 1965.

Rehearing Denied Nov. 16, 1965.

Owen W. Crumpacker, Harold Abrahamson, Hammond, Ind., Richard O. Olson, Chicago, Ill., Crumpacker & Abrahamson, Hammond, Ind., for defendant-appellant.

Max Cohen, Louis C. Holland, Gary, Ind., for plaintiffs-appellees.

Before SCHACKENBERG and KILEY, Circuit Judges, and GRUBB, District Judge.

KILEY, Circuit Judge.

The appellant-Railroad appeals from judgments on verdicts in favor of (1) Eldridge Simon, Jr., a minor, for $75,000.00 for personal injuries, and (2) Eldridge's mother, Pauline Simon, for $12,500.00 for her son's medical expenses and loss of his services. We affirm both judgments.

Eldridge Simon, Jr., then about three years old, was riding in an automobile with his grandparents, Cosie and Lola Boyd, at about 11:09 a.m. on September 19, 1961, a clear, dry day. The automobile collided with the Railroad's train in an unincorporated area in Lake County, Indiana upon a grade crossing over a two lane blacktop road known as Whitcomb Street. The grandparents were killed in the collision and the minor injured. The train was going westerly at about 36 miles per hour; the automobile, driven by the grandfather, was going between 20 and 30 miles per hour in a northerly direction as it approached the approximately right-angle crossing. The automobile did not stop before entering the crossing, which had standard crossbuck signs at the southeast and northwest corners.

Four lawsuits against the Railroad arose from this collision. The suits were consolidated for trial, resulting in judgments for the Railroad in each of the two wrongful death actions brought by Pauline Simon, as administratrix, but against the Railroad in the judgments now before us in favor of Eldridge Simon, Jr., and Pauline Simon, his mother, individually.

Several witnesses on each side testified with respect to the principal issue at the trial, whether the Railroad was guilty of negligence in failing to give, and maintain, the statutory whistle and bell warning signals.[1] At the close of all the evidence, the Railroad moved unsuccessfully for directed verdicts. Its subsequent motions for judgment notwithstanding the verdicts for Eldridge and Pauline Simon were also denied.

■ The issue before us is whether the district court erred in its rulings on the motions. Under Indiana law, we test the rulings by considering "only the evidence most favorable" to the person against whom the motion is directed. Snider v. Truex, 222 Ind. 18, 51 N.E.2d 477, 479 (1943); Callahan v. New York Central Railroad Co., 125 Ind.App. 631, 125 N.E.2d 263, 265 (1955); Pennsylvania Railroad Co. v. Rizzo, 119 Ind. App. 505, 86 N.E.2d 91, 92–93, 87 N.E.2d 885 (1949).

We think there is ample evidence of probative value, taken "most favorably" for plaintiffs here, to justify the district court in refusing to direct the verdicts: There were high weeds, foliage and a grove of trees at the southeast corner of the crossing which obscured the view of a driver going north on Whitcomb. Boyds' automobile skid marks were about

1. Burns Ind. Stat. Ann. § 55–1243 (1951) provides in part: *"Signals at crossings*—It shall be the duty of all railroad companies operating in this state, to have attached to each and every locomotive engine, a whistle and a bell, such as are now in use or may be hereafter used by all well managed railroad companies, and the engineer or other person in charge of, or operating such engine upon the line of any such railroad, shall, when such engine approaches the crossing of any turnpike or other public highway in this state, beginning not less than eighty (80) rods from such crossing, sound the whistle on such engine distinctly not less than three (3) times, which sounding shall be prolonged or repeated until the crossing is reached, and ring the bell attached to such engine continuously from the time of sounding such whistle until such engine shall have fully passed such crossing: * * *."

6' 10" before the point of impact. The train, being operated by the fireman, did not have its emergency brakes applied until the front end of the locomotive was already at the east edge of the crossing. The engineer, sitting on the left side of the locomotive looking south on Whitcomb, did not see the Boyd automobile until the locomotive was at the edge of the crossing, the "moment of impact," at which time he "hollered" to the fireman to apply the emergency brakes. Several witnesses in proximity to the crossing, in positions to hear, testified that they heard no whistle blown and no bell rung, while other witnesses testified they heard the whistle blown but at distances considerably less than 80 rods from the crossing.

The principal argument of the Railroad is aimed at the "negative evidence" of plaintiffs' witnesses that they heard no whistle sounded. On the premise that this evidence is consistent with the evidence for the Railroad on this whistle issue, the Railroad argues that there is therefore no conflict on the issue. Even if true that fact would not preclude an inference by the jury that no whistle had blown, or that it had not blown within the required distance, if the favorable evidence for plaintiffs supported the inference, as we think is true here.

The cases relied on by the Railroad are distinguishable. In those cases this court, and others, have found only "negative evidence" too weak to raise a conflict, particularly because the favorable testimony was that of witnesses who "did not remember" whether or not the signal had been given, or because the witness was so inattentive as to render the testimony too weak to support the verdict, or not in a favorable location to observe. See, e. g., Spikings v. Wabash R. Co., 201 F.2d 492, 498 (7th Cir. 1953); Clark v. Baltimore & O. R. Co., 196 F.2d 206, 210–11 (6th Cir. 1952); Constantine v. Pennsylvania R. Co., 114 F.2d 271, 275 (7th Cir. 1940); Pere Marquette Ry. Co. v. Anderson, 29 F.2d 479, 480 (7th Cir. 1928); Pennsylvania R. Co. v. Rizzo, 119 Ind.App. 505, 86 N.E.2d 91, 93 (1949). As will appear hereinafter, testimony favorable to plaintiffs was not valueless because of such inattention or unfavorable location for observation.

David Worth testified that he drove west on the street immediately south of the tracks, parallel to the train, and did not hear the train bell or whistle prior to the impact—even though his car windows were down and he had no car radio. Mr. and Mrs. Lucas lived approximately 200 feet west and 50 feet south of the crossing, and testified they heard the "thud" of the collision and the sound of the whistle about the same time. Geneva Wright lived just two houses north of the crossing, and testified that she did not hear the train whistle or bell prior to the collision, though she heard, as she was watching TV, the train and noise and knew a train was in the vicinity. Witnesses for the Railroad included: Mrs. Reeder, who did not hear a bell; Shirley Traicoff, who heard the whistle and then a "thud", but does not recall hearing a bell, and stated that the whistle seemed like one long whistle; Walter Grzelak, who heard "one whistle" when the train was about two blocks east of the Whitcomb crossing, but did not hear a bell; Elsie Hart, who heard what sounded like one whistle prior to the impact; Henrietta Gearhart, who testified she did not recall hearing any bell; and Evelyn Hulsey, who testified she heard the whistle blowing when the train was about even with her house a block and a half from the crossing, but did not recall hearing a bell.

We think the testimony in this record on the question of whether or not the warnings were given in accordance with the statutory requirement presented a question for the jury, and the district court did not err in denying the Railroad's motions to take the case from the jury.

In Bartley v. Chicago & E. I. Ry. Co., 216 Ind. 512, 24 N.E.2d 405 (1939), the Indiana Supreme Court reversed a judgment on directed verdict for the defendant-railroad. In comment-

298

ing on the railroad's contention that the lower court was correct in holding that the required signals were given because there was no conflict between plaintiff's witnesses' testimony that they heard no signals and the railroad's witnesses' testimony that they heard signals by bell and whistle, it was stated: "While negative evidence may not have the same probative value as positive evidence, it is usually the only method of proving the failure of a railway company to give signals and, in such a case as this, is evidence which the jury may properly weigh and consider, together with positive evidence, if any, to the contrary, in determining whether such signals were given." 24 N.E.2d at 409. In Callahan v. New York Central Railroad Co., 125 Ind.App. 631, 125 N.E.2d 263, 267 (1955), the Indiana Appellate Court also reversed a directed verdict for the defendant-railroad, holding *inter alia* that the testimony of a witness that he did not hear any bell constitutes negative evidence which the jury may properly weigh and consider, and which "may or may not have the same probative value as positive evidence," and approved the "general rule that the testimony of one who is near a crossing and in a situation to have heard the whistle, that he did not hear it, is generally sufficient to support the inference that such a warning signal was not given." The question of the credit to be given to the testimony of the witnesses, measured by their opportunity to observe, and their attention and credibility, was for the jury, in our opinion.

■ There was sufficient evidence to support the verdicts on this one question of negligence, and this is enough to sustain the judgments. Ricks v. Emery, 134 Ind.App. 182, 185 N.E.2d 546, 548 (1962). We do not reach the contention made with respect to the alleged violation of the crossing sign statute.

■ We see no merit in the contention that the judgments must be reversed because of the alleged inconsistency between the verdicts against Pauline Simon as administratrix in the death actions, and for her individually. We are not per-

suaded that the verdicts in the death cases resulted from finding the Railroad not negligent. The district court fully instructed the jury, without objection, upon the duty of care which the law imposes on the driver of the automobile and its adult passenger, and that Pauline Simon could not recover in the death actions if "Mr. and Mrs. Boyd" were guilty of any negligence which proximately contributed to the collision and their resulting deaths; also that the minor passenger could not be charged with any contributory negligence. Thus the jury could have decided, without inconsistency, that the driver, Cosie Boyd, was negligent in proceeding as he did onto the tracks, and that his wife, Lola, did not warn him of the danger of which she must have, or should have, known; and that therefore the negligence of the Boyds precluded recovery in the death actions even though the Railroad was negligent. This question was not in issue as to Eldridge Simon, and Pauline Simon's individual recovery depended upon the judgment for her son.

Accordingly, the judgments are affirmed.