INDIANAPOLIS UNION RAILWAY *v.* RONALD WALKER, A MINOR BY HIS NEXT FRIEND, EVERETT WALKER.

[No. 1-573A88. Filed November 12, 1974. Rehearing denied December 16, 1974. Transfer denied October 7, 1975.]

*Karl J. Stipher, Terrill D. Albright, Norman G. Tabler, Jr., Baker & Daniels,* of Indianapolis, *Richard T. Lineback, Lineback & Lewis,* of Greenfield, for appellant.

*Howard J. DeTrude, Jr., C. Warren Holland, Kitlinger Young Gray & DeTrude,* of counsel, of Indianapolis, for appellee.

LYBROOK, J.—Plaintiff-appellee Ronald Walker, by his next friend, Everett Walker, instituted this action seeking damages for personal injuries resulting from a collision between a locomotive of defendant-appellant Indianapolis Union Railway Company (Railway) and an automobile in which plaintiff was riding as a passenger. From judgment on a jury verdict for plaintiff in the sum of $200,000, Railway appeals, presenting the following issues for review:

1. Whether the instructions given concerning Railway's duty of care in operating its trains and maintaining a public crossing were erroneous statements of the law.

2. Whether the court erred in instructing the jury on the doctrine of last clear chance.

3. Whether the court erred in preventing Railway from examining one of its own witnesses concerning a prior written statement allegedly inconsistent with the witness' trial testimony.

4. Whether the court abused its discretion in allowing certain testimony by one of plaintiff's witnesses called to testify as an expert concerning plaintiff's injuries.

5. Whether Railway established that plaintiff was contributorily negligent as a matter of law in one or both of the following particulars:

a. Voluntarily entrusting himself as a passenger to a driver whom he knows or should have known to be under the influence of alcohol.

b. Failing to maintain a lookout for railroad crossings and failing to warn the driver of the approach of a train.

6. Whether the court's refusal to give certain of Railway's tendered instructions resulted in a failure to communicate to the jury Railway's theory of defense.

The facts most favorable to the verdict are as follows:

On the evening of September 3, 1966, Walker met Melvin Martin at a tavern in Indianapolis. Martin there consumed a quantity of beer. The two men then drove to another tavern where each consumed more beer. At approximately 1:00 A.M., the men had left the second tavern and were proceeding south on North Sherman Drive in Martin's automobile with Martin at the wheel. Martin testified that he was not drunk at that time, but not completely sober either. He further stated that rain had filled the gutters making it difficult to determine the position of the west edge of the street. The street being four lanes, he proceeded south on the outside lane at approximately twenty-five to thirty miles per hour to the point of collision with defendant's locomotive, at about the 1700 block of North Sherman Drive. He described the weather conditions as a hard rain with poor visibility. The windows of the automobile were closed, and side vision was impaired. He testified that he saw no flares, flashers, signs, cross-bucks, nor heard any auditory warnings prior to the collision. He

saw no signalman, nor any other person warning traffic of the presence of the engine, and saw the switch engine for the first time after the collision.

Ronald Walker, the plaintiff, testified that on the night of the accident Martin did not appear to be drunk as they left the second tavern prior to the collision. He further testified that he had no memory of the accident itself, his last recollection being pulling up to a stop light on Sherman Drive.

Railway's witnesses testified that the engine was proceeding to an industry on the east side of Sherman Drive. A brakeman stated that the engine had stopped immediately west of the street and that he had disembarked, proceeded across the street to remove a chain, and returned to the street to signal traffic. He testified that he held a flare in one hand to signal traffic and a white lantern in the other to signal the train. He stated that he slowed one car in the outside southbound lane, signaled the engine to proceed onto the crossing, then moved to the east side of the street to signal northbound traffic.

The engineer testified that following the signal from the brakeman, he moved the engine out onto the street. Upon noticing that Martin's automobile was not slowing down, he braked and reversed the engine at the same time. He testified that Martin's automobile came upon the area of the tracks, swerved around the automobile stopped in the outside lane and struck the engine which at that time was blocking both southbound lanes.

The undisputed evidence reveals that the crossing in question is not protected by any type of fixed warning devices such as signs, flashers, gates, etc.

## ISSUE 1.

Railway objected to and assigns as error the giving of the following instructions:

"Plaintiff's Instruction No. 1

The defendant Indianapolis Union Railway Company has a duty to the public to exercise reasonable care for the safety of the traveling public in the operation of its trains where the tracks upon which they are operated cross public highways. You are instructed that in determining whether the defendant in this case complied with its duty to exercise reasonable care for the safety of the traveling public, including plaintiff, you may take into consideration the conduct of the defendant's crew and all the circumstances including the presence or absence of adequate warning signals, signs, gates, bells, watchmen, flagmen, and whether the train whistle or horn was sounded, together with all other circumstances concerning the crossing. If you find that the conduct of the defendant under all of said circumstances was not reasonable and prudent then the defendant would be guilty of negligence.

You are further instructed that in considering whether plaintiff, who was a passenger in an automobile, was guilty of negligence, you may take into consideration all of the above factors insofar as they would bear on his conduct under the existing circumstances.

Plaintiff's Instruction No. 2

In determining whether the railroad exercised reasonable care in maintaining a crossing reasonably safe for users of the public highway in question, and, further, in determining whether the operation of the train at the place and in the manner as shown by the evidence was or was not negligence, you may consider the fact, if it be a fact, that there were or were not any warning signals, gates, bells, an adequate number of flagmen, together with all other circumstances concerning the crossing, such as obstructions to the view, the time of day or night, the color of objects and their background, and the frequency with which travelers pass over the crossing."

Railway initially urges that a jury may not consider the absence of warning devices at a crossing which are not required by law without a prior determination that the crossing is particularly or extraordinarily hazardous. As we shall demonstrate, in the proper context, this statement is a valid rule of law. However, its applicability in any given case is

contingent upon the specific allegations of negligence which the injured plaintiff asserts. The necessity of identifying the particular breach of duty advanced by the plaintiff is revealed in the following excerpt from *Pennsylvania Railroad Co.* v. *Sherron* (1952), 230 Ind. 610, 105 N.E.2d 334:

> "Negligence cannot be predicated alone upon the failure of a railroad company to erect and maintain safeguards at a public highway crossing unless such are required by statute or by the public service commission or other duly constituted authority. *Terre Haute, etc., Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N.E. 740; *Pennsylvania R. Co.* v. *Rizzo* (1949), 119 Ind. App. 505, 86 N.E.2d 91, 87 N.E.2d 885; *C.C.C. & St. L. Ry. Co.* v. *Gillespie* (1933), 96 Ind. App. 535, 173 N.E. 708. However, the failure to furnish additional safeguards at intersections may nevertheless be considered in determining whether the defendant has been guilty of negligence if the issue is properly presented. It is the duty of a railroad company to operate its trains in the exercise of reasonable care. The absence of warning signals or devices, together with all other circumstances and conditions surrounding the crossing, may be considered by the fact finder in determining whether, under all the circumstances, the train was negligently operated if the question is presented by the issues joined." See also, *Terre Haute, Indianapolis and Eastern Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N.E. 740; *Tyler* v. *Chicago & Eastern Illinois Railway* (1961), 241 Ind. 463, 173 N.E.2d 314; *Minninger* v. *New York Central Railroad Co.* (1952), 123 Ind. App. 338, 109 N.E.2d 104.

Thus, where a plaintiff is asserting an alleged breach of the railroad's duty to exercise reasonable care in the operation of its train, the jury may always consider the presence or absence of warning devices at the crossing together with all other attendant circumstances and conditions.

Quite different from the above theory of negligence is one in which a plaintiff asserts that irrespective of the manner in which a train was operated, the railroad was negligent for failing to erect and maintain warning devices at a crossing. As revealed in the cases heretofore cited, the courts of this

State were not willing to impose any duty to provide warning devices not required by statute or competent authority. Such a theory therefore necessarily failed. However, in *Central Indiana Railway Co.* v. *Anderson Banking Co.* (1969), 252 Ind. 270, 247 N.E.2d 208, our Supreme Court expressly approved the following so-called majority rule which under certain circumstances permits negligence predicated on a failure to warn:

> "The doctrine prevailing in most jurisdictions, as the later cases show, is that where there is evidence that the particular crossing, either because of its more or less permanent features or because of circumstances existing and affecting its use at the given time, was more than ordinarily hazardous, a question for the jury or the trier of facts is usually presented as to whether or not reasonable care on the part of the railroad required it to provide a flagman to warn of approaching trains.
>
> "On the other hand, in the absence of evidence of more than ordinary hazard attending public use of the crossing, there is, according to the doctrine generally laid down, no basis for the contention that the railroad company was under any duty to provide a flagman." 24 A.L.R.2d 1169, 1170.

After reviewing certain cases revealing a tendency to move away from strict adherence to the minority view, the court held:

> "In light of the foregoing discussion the better rule to adopt is the 'majority rule' which allows liability to be imposed absent a statutory requirement if the facts of the particular case are such as to give the railroad the duty to warn the traveling public of the extra-hazardous nature of the crossing. The question of the presence of an extra-hazardous crossing could be left to the jury's determination."

Our analysis of the case at bar reveals that Walker predicated negligence on both of the above described theories, being, negligent operation and negligent failure to warn. Plaintiff's Instruction No. 1 is directed solely to the issue of negligent operation. It correctly permits the jury to consider

the presence or absence of warnings and it not subject to an objection that such warnings may be considered only after a prior determination that the crossing is extra-hazardous.

The theory of negligence predicated on a failure to warn is embodied in Plaintiff's Instruction No. 2 in the language ascribing to the railroad a duty to exercise "reasonable care in maintaining a crossing reasonably safe for users of the public highway in question." While the instruction does not expressly charge that the crossing must be found extra-hazardous as a condition to the imposition of a duty to provide warnings not required by law, we are of the opinion that it is not fatally defective. We do not read the instruction as permitting a finding of negligence due to the absence of warnings irrespective of the conditions and circumstances surrounding the crossing. Rather, it permits the jury to consider the presence or absence of warnings *together with* circumstances and conditions which could render the crossing extra-hazardous.

Any potential error in the instruction is rendered harmless since, in our opinion, the evidence most favorable to the verdict supports a finding that the crossing was particularly hazardous given the conditions existing at the time of the collision.

While the evidence affirmatively reveals a complete absence of fixed warning devices at the crossing, Railway argues that the evidence reveals the presence of a flagman signaling traffic with a flare thereby precluding a determination of extra-hazardousness. However, this assertion amounts to little more than an invitation to weigh evidence on appeal. Martin's negative testimony that he did not see a flagman constitutes evidence of probative value from which the jury could have found or inferred either that no flagman was present or that he was not in a position so as to be visible to southbound traffic as Martin approached the crossing. Compare, *Smith* v. *Chesapeake and Ohio Railroad Co.* (1974), 160 Ind. App. 256, 311 N.E.2d 462.

ISSUE 2.

The most appropriate expression of the doctrine of last clear change against which to test the evidence adduced in the case at bar appears in *Indianapolis Traction and Terminal Co.* v. *Croly* (1911), 54 Ind. App. 566, 96 N.E. 973. Therein, it was determined that the doctrine would apply

". . . to that class of cases in which it appears that the motorman actually saw the person injured and realized or should have realized the peril to which he was exposed or was about to expose himself, in time to have prevented the injury. In such a case, the special duty toward the particular person arises as soon as the motorman sees him under such conditions as would indicate to a person of ordinary prudence that he was in danger of being injured by the car, or was about to expose himself to such injury. It then becomes the special duty of the motorman to use every reasonable means to avoid injuring him; and if he does not do so, the injured person may recover, notwithstanding his want of care in failing to discover the approach of the car continued up to the very instant of the injury, and notwithstanding also that the plaintiff possessed the physical ability to have avoided the injury, in case he had discovered his peril at any time before the accident happened." See also, *Chesapeake & Ohio Railway Co.* v. *Williams* (1943), 114 Ind. App. 160, 51 N.E.2d 384.

Railway's engineer testified that he had stopped the locomotive immediately west of Sherman Drive. He noticed the automobile in which Walker was riding just as he was ready to move the locomotive onto the street in response to a signal from his brakeman. He testified that the automobile was roughly three hundred yards north of the crossing and that his attention was drawn to it both because of its speed and the fact that it appeared to be about half way over the center line of the street. In our opinion this observation, coupled with existing conditions such as the time of day and nature of the crossing, was sufficient to present to the jury the question of whether the engineer should have realized that the occupants of the automobile might be exposed to injury. The jury was then entitled

to consider whether the engineer failed to exercise due care in continuing to move the locomotive onto the crossing. Therefore, the court did not err in overruling Railway's objection to instructing the jury on the doctrine of last clear chance.

## ISSUE 3.

Railway called as a witness on its behalf a police officer who had investigated at the scene of the collision. On cross-examination the witness was questioned concerning his observations of Martin and Walker. He testified that due to the injuries which they sustained he was unable to tell whether either man was drunk and that the only indication that Martin had been drinking was the odor of alcohol on his breath. He further testified that Martin spoke fluently and that while Martin walked with a limp he was unable to determine the cause.

On redirect examination, the witness was handed a copy of the accident report he had made the evening of the collision and asked whether it refreshed his recollection concerning Martin and Walker and alcoholic beverages. Plaintiff's objections on the grounds that the witness had not indicated any difficulty of recollection and that Railway was attempting to impeach its own witness were sustained. In further attempting to pursue this line of questioning, Railway was met with an objection of misconduct of counsel, which was sustained. Railway then entered into the record the following offer to prove:

"The defendant makes an offer to prove at this time that if allowed to pursue this line of questioning that the officer would in fact testify that his memory was better at that time than it is now, and further would testify that based upon his refreshing of memory and so forth, that one of the contributing circumstances was that the driver of the automobile Melvin Martin had been drinking at the time and that his ability was impaired."

Railway argues that the court's ruling contravenes IC 1971, 34-1-14-15 (Burns Code Ed.), which, *inter alia*, permits a

party to contradict his own witness by showing that the witness had made statements different from his testimony at trial. However, we are unable to determine that the court's ruling constitutes reversible error. The purpose of an offer to prove is to enable both the trial court and this court to determine the admissibility and relevance of proffered testimony. *Marposon* v. *State* (1972), 259 Ind. 426, 287 N.E.2d 857. Mere statements of the conclusions of the person making the offer do not provide a sufficient basis upon which to make this determination. *Malone* v. *State* (1911), 176 Ind. 338, 96 N.E. 1; *Albert Johann & Sons Co.* v. *Echols* (1968), 143 Ind. App. 122, 238 N.E.2d 685.

Railway's offer to prove merely presents the offeror's conclusions that if allowed to refresh his memory by examining the report, the witness would testify that Martin's drinking was a contributing factor in the accident. It failed to inform the court of specific statements in the report which were or might have been contradictory to the witness' testimony. Likewise, this court is deprived of a sufficient basis upon which to determine whether the trial court's ruling constitutes error since neither the report nor any excerpt therefrom is in the record.

## ISSUE 4.

Called as an expert by plaintiff to testify in connection with his physical injuries was Dr. Ralph Reitan who holds the title of professor of psychology and neuro-surgery at the University of Washington. Reitan testified that he holds degrees in philosophy and psychology and is a specialist in the field of neuro-psychology, which deals with the relationship of brain functions to behavior. While he is neither a neuro-surgeon nor a licensed medical doctor, he serves as a consultant to neuro-surgeons and has served as a lecturer to students of neuro-surgery.

Reitan was the first student of Dr. Warren Halstead, pioneer in the area of human neuro-psychology and developer of the

Halstead Neuro-Psychological Test Battery used in evaluating brain behavior relationships. Continuing Halstead's work following his decease, Reitan developed and refined tests for brain deficits, commonly referred to in professional literature as the Halstead-Reitan Battery.

Reitan stated that as the tests were developed and administered over the years, it was revealed that differing results were obtained from patients suffering from differing types of brain damage. He testified to the publication of many papers correlating particular measurements with various types of brain injuries.

Dr. Reitan testified that Walker was submitted to testing at his neurological laboratory at the Indiana University Medical Center on August 25, 1969. Following a detailed explanation of the tests and their administration, Reitan stated that several test results indicated damage to the cerebral area of the brain and that the overall results implied impairment of both cerebral hemispheres with the left side of the brain more seriously damaged than the right side.

Reitan also testified that since there is customarily improvement over a period of time following a traumatic brain injury, Walker was tested a second time nearly two and one-half years following the first examination. An administration of the exact same tests produced results similar to those obtained from the initial testing, and the interpretation was practically identical. Reitan stated the significance of these results to be that Walker's condition was relatively stabilized and permanent.

One of the grounds upon which Railway objected to Dr. Reitan's testimony was that it would not be based upon reasonable medical certainty. The specific argument presented in appellant's brief is that Reitan was not competent to testify as an expert concerning Walker's physical, neurological condition since he is not a licensed medical doctor. However, we can only conclude that Railway's

contention is without merit. Reitan's testimony reveals his service as a consultant to groups such as the National Institute of Neurological Diseases and Stroke and the Space Medical Advisory Group of NASA. Acceptance of his expertise in the neurological field is also indicated by his service as a consultant to neuro-surgeons.

Railway further argues that Reitan's testimony was erroneously admitted since his opinions were based on results of tests administered and scored by third persons not called as witnesses and since the tests themselves were not admitted into evidence. The latter of these grounds not having been raised in Railway's objections at trial, it cannot now be asserted on appeal. See *Cooper* v. *State* (1972), 259 Ind. 107, 284 N.E.2d 799; *Glen Park Democratic Club, Inc.* v. *Kylsa* (1966), 139 Ind. App. 393, 213 N.E.2d 812. With respect to the former ground, we do not feel that Reitan's testimony was rendered hearsay due to the administration of the tests by a third party. Reitan testified that the tests were administered under his supervision and in his laboratory by a neuro-psychology technician working for him and under his direction. He testified that the technicians are trained in exact procedures in administering the tests so as to achieve objectivity of data collection, and the examiner follows a prescribed written format. While recognizing that an element of judgment enters into the administration of any psychological test due to interaction between the examiner and the subject, Reitan emphasized that the tests are designed for a procedure of objective data collection. All tests represent data collection procedures as opposed to interpretation. The technicians merely administer the tests and record results. They do not interpret the test results, and only Reitan renders an opinion as to the results.

We conclude that the trial court properly overruled Railway's objections to Dr. Reitan's testimony.

## ISSUE 5.

We cannot say as a matter of law that Walker was contributorily negligent in entrusting himself as a passenger in Martin's vehicle. Where the evidence is in dispute, is conflicting, or is such that differing inferences or conclusions may be drawn, the question of contributory negligence is one of fact for the jury. *Pennsylvania Railroad Co.* v. *Mink* (1966), 138 Ind. App. 311, 212 N.E.2d 784. The evidence supports differing conclusions on the question of whether Martin was intoxicated at the time of the collision. Further, even had the evidence established as a matter of law that Martin was intoxicated, there would remain for the jury the question of whether such condition was a proximate cause of plaintiff's injuries. Railway's assertion that Martin would have seen the engine had he not been drinking is pure speculation.

Likewise, the question of whether Walker failed to maintain a proper lookout was for the jury to decide. As we have determined earlier in this opinion, there was evidence from which the jury could have found that given existing conditions and circumstances, the crossing was extra-hazardous. Railway's assertion that Walker would have seen the locomotive had he maintained a proper lookout is little more than an argument of evidence most favorable to the appellant.

We cannot find that Walker was contributorily negligent as a matter of law.

## ISSUE 6.

Railway contends that the trial court erred in refusing two of its tendered instructions dealing with the duty of an automobile passenger to maintain a proper lookout. We cannot agree. The subject matter of these instructions was adequately covered by other instructions given. See, *Richmond Gas Corp.* v. *Reeves* (1973), 158 Ind. App. 338, 302 N.E.2d 795; *Leppert Bus Lines, Inc.* v. *Rayborn* (1962), 133 Ind. App. 325, 182 N.E.2d 260.

Appellant having failed to demonstrate reversible error in the trial proceedings, judgment is hereby affirmed.

Robertson, P.J. and Lowdermilk, J., concur.

NOTE.—Reported at 318 N.E.2d 578.