ULLRICH, ADMINISTRATOR, *v*. THE CLEVELAND, CIN-CINNATI, CHICAGO AND ST. LOUIS RAIL-WAY COMPANY.

[No. 18,229.    Filed June 30, 1898.    Rehearing denied Oct. 26, 1898.]

WILFUL INJURY.—*Railroads.*—*Complaint.*—A complaint against a railroad company alleging that plaintiff's intestate was on a trestle fifteen feet high and 300 feet long from which there was no escape from passing trains by persons walking thereon, except from either end thereof; that said trestle and a person upon it could be plainly seen for a distance of one-half mile by an approaching train; that defendant knew the location and dangers of said trestle, and knew that the only escape for a person walking thereon was from the ends thereof; that when intestate had gone one hundred feet on said trestle he saw an approaching train, and before he could return to the end of the trestle upon which he entered he was run upon and killed; that defendant's servants in charge of the train were in full view of intestate for a distance of 2,000 feet, and were able to stop the train in time to save intestate from injury, does not state facts sufficient to show a wilful killing, as it is not shown that intestate was in a perilous condition when seen by the trainmen 2,000 feet away, nor at what point the peril became manifest, nor that at such perilous point the engineer failed to make every possible effort to stop the engine.    *pp. 359-363.*

SAME.—*Railroads.*—Where an engineer in charge of a train acted upon the presumption that a person walking upon a trestle in front of the train could and would get to a point of safety before the approach of the train, and so acted until it became too late by the use of the means within his control to avoid running upon him, such reliance cannot be considered wilfulness.    *pp. 363, 364.*

From the Dearborn Circuit Court.    *Affirmed.*

*George E. Downey, Hugh D. McMullen, Harry R. McMullen* and *Cassius W. McMullen*, for appellant.

*John T. Dye, Byron K. Elliott* and *William F. Elliott*, for appellee.

HACKNEY, C. J.—The lower court sustained the ap-

pellee's demurrer to an amended second paragraph of complaint, and that ruling is here urged as error. Said paragraph was entitled, "John Ullrich, Administrator of the Estate of Peter Vogel, Deceased, v. The Cleveland, Cincinnati, Chicago and St. Louis Railway Company." The allegations in the body of the complaint were by "John Ullrich, plaintiff," against the appellee named as defendant; and it was alleged that between Aurora and Lawrenceburg the appellee maintained, as a part of its railway, a narrow trestle three hundred feet in length and fifteen feet high, and upon which there was no escape from passing trains by persons walking thereon, excepting from either end thereof. It was alleged that said trestle and a person upon it could be plainly seen for the distance of one-half mile by the managers of a train approaching the same from Aurora; that the appellee and the managers of its trains knew the location and dangers of said trestle, and knew that the only escape for a person walking upon the same was from the ends thereof; that, on a day named, "plaintiff's decedent" went upon said trestle for the purpose of crossing from the end thereof nearest to Aurora, no train then being in view, and when he had gone but one hundred feet of the distance over said trestle, his attention was called to an approaching train from Aurora, whereupon he attempted to return to the end of the trestle upon which he so entered, but, before he could do so, was run upon and killed by said train. It is alleged that the appellee "by its employes in charge of said approaching train, * * * well knowing the danger in which plaintiff's decedent was, and well knowing the dangerous condition of said structure, and well knowing that there was no means of escape therefrom, except as hereinbefore mentioned, and well knowing that plaintiff's decedent was cut off from

all means of escape, and being in full view of said dece-
dent for a distance of 2,000 feet, and being fully able to
stop said train in time to save decedent from injury,
and seeing decedent on said structure for said distance
of 2,000 feet, and defendant's servants then operating
said engine saw plaintiff's decedent's perilous and
dangerous situation, and saw him turn around
and attempt to reach the nearest end of said bridge,
so as to escape the danger, failed to stop said train,
but then and there negligently, recklessly, purposely,
and wilfully ran said train upon said decedent." One
thousand feet of the course of said approaching train
is alleged to have been in Aurora, and to have been
run at the rate of twenty-five miles per hour, and the
distance from the corporation line of Aurora to the
trestle is described as forty rods. There were other
allegations as to negligence, but it is conceded that
the sufficiency of the pleading must be determined
upon its allegations of wilfulness. It was alleged
also that "plaintiff is the duly appointed and quali-
fied administrator of 'decedent's estate,' and that de-
cedent left his widow and grandchildren surviving
him."

In the body of the pleading there was no allega-
tion of the name of or as to who the decedent was,
nor, beyond the allegation already referred to, as to
the capacity in which the appellant sued. There are
no allegations as to the distance of the train from the
decedent when he discovered its approach, nor as to
the rate of speed at which the train ran over the space
of forty rods next before reaching the trestle; but the
allegations support the theory that he discovered the
approach of the train when it was 2,000 feet distant,
and that its speed of twenty-five miles per hour was
to the point forty rods from the trestle. The *ad
damnum* allegation was as follows: "Plaintiff avers

that, on account of the wrongs and injuries hereinbe-
fore complained of, he has been damaged in the sum
of," etc.

Three objections are urged against the complaint:
First, that it does not appear from the body thereof
that the appellant sues in a representative capacity;
second, that the allegations do not disclose the name
of the person killed; and, third, facts sufficient to con-
stitute a wilful killing are not alleged.   Deeming
the last of these objections sufficient, we disregard
the others, and we also pass over the serious doubt
as to whether the assignment of error is sufficiently
specific to present any question for decision, it ap-
pearing from the record that the second paragraph
of complaint was superseded by four separate filings
of an "amended second paragraph of complaint,"
three of such amended paragraphs having gone down
under demurrer.   No claim is made for the pleading
that it states a cause of action sounding in negli-
gence, and it is practically conceded that its suffi-
ciency must be determined as a charge of a wilful
killing, the decedent having been a trespasser upon
the railway at the time.   Mere epithets give the
pleading no force, and it is conceded by the learned
counsel for the appellant, specific averments control
general averments.

The following analysis of the specific averments of
the pleading is made on behalf of the appellant:   "(1)
Appellant's decedent was on a high trestle.   (2) There
was no escape from the trestle except by either end.
(3) Appellant's decedent was 100 feet from the end.
(4) Appellant's decedent was endeavoring to retrace
his steps.   (5) Appellee's engineer in charge of the en-
gine saw appellant's decedent on the trestle; (a) knew
where the trestle began; (b) knew the construction of
the trestle; (c) knew appellant's decedent was cut off

from all means of escape, except by the end; (*d*) saw decedent trying to escape; (*e*) was two thousand feet distant; (*f*) knew of decedent's perilous condition in time to have stopped the train; (*g*) failed to stop the train and ran decedent down."

A single authority is cited in support of the complaint, *Palmer* v. *Chicago, etc., R. R. Co.*, 112 Ind. 250. That case correctly decides that there may be what the law will pronounce a wilful killing where life is taken purposely, or where one pursues a course which he must reasonably know will bring death to another, although he may not intend to inflict injury; and, further, that one upon a railroad when a train is approaching, although he may be seen by the engineer, may be presumed until the last moment to leave the track and avert danger, unless there be something from which the engineer may reasonably infer that such person, from inability to do so or from ignorance of the approach of the train, will not leave the track. To the same effect are many other decisions of this court, including the late cases of *Parker* v. *Pennsylvania Co.*, 134 Ind. 673; *Pennsylvania Co.* v. *Meyers*, 136 Ind. 242; *Evans* v. *Pittsburgh, etc., R. W. Co.*, 142 Ind. 264.

It is apparent, therefore, that to bring the case within the rules of the authority cited, it not being claimed that the killing was done intentionally, it must appear that the decedent was in a position of peril from which he could not escape unless the engineer should slacken the speed or stop the train, and that the engineer knew of the peril in time to have so slackened speed or stopped the train. No doubt there was a time when the decedent's position was one of peril; and that was when the locomotive first came so near him that he could not reach the end of the trestle before it arrived. That was the time when

the engineer, seeing the decedent and it being reasonably apparent that such peril existed, should have used every proper energy to check the speed or stop the train.

It is manifest that at the point of two thousand feet from the trestle, with knowledge that decedent was upon the structure and attempting to retrace his steps for one hundred feet, to a place of safety, the engineer was not reasonably required to lessen the alleged speed of twenty-five miles an hour, which would give the decedent nearly fifty-five seconds to escape, requiring him to walk only at the rate of one and one-quarter miles per hour. Peril did not exist when the train was two thousand feet distant, and from that point, under the authorities cited, the engineer had the right to presume that the decedent would get off the trestle, and the right to continue that presumption until the point making it perilous to continue was reached. It cannot be said, therefore, that it was the engineer's duty to reverse his engine when two thousand feet from the trestle, and we are not advised by the pleading at what other point the peril became reasonably manifest, nor that at such point the engineer failed to make every possible effort to stop the engine. The absence of allegation of the rate of speed covering the last forty rods, and at the time the engine struck the decedent, is suggestive that the rate was unfavorable to the appellant, and that would also imply effort on the part of the engineer to check the speed or stop the engine. If the engineer acted on the presumption that the deceased could and would get to a point of safety, and so acted until it became too late by the use of the means within his control, to avoid running upon him, such reliance could not be considered wilfulness.

*Cleveland, etc., R. W. Co.* v. *Miller,* 149 Ind. 490, and authorities there cited.   In our opinion, the lower court ruled correctly, and the judgment is affirmed.