**CITY OF NORTH VERNON,**
**Indiana, Appellant,**

v.

**The BALTIMORE AND OHIO**
**RAILROAD COMPANY,**
**Appellee.**

**No. 72A04–8602–CV–46.**

Court of Appeals of Indiana,
Fourth District.

Dec. 2, 1986.

Robert L. Barlow, II, Cooper, Cox, Jacobs, Reed & Barlow, Madison, for appellee.

MILLER, Judge.

Baltimore and Ohio Railroad Company filed a declaratory judgment action against the City of North Vernon, requesting an injunction to prevent the City from enforcing three ordinances which require the Railroad to maintain crossing guards at two crossings. The trial court entered judgment against the City, ruling the three ordinances are void and contravene IND. CODE 36–1–3–8(7) because the power to regulate the manner in which citizens are to be warned of danger from railroads has been preempted from municipalities and placed with the Indiana Public Service Commission pursuant to I.C. 8–6–7–1 and I.C. 8–6–7.7–2, except as delegated to municipalities pursuant to I.C. 9–4–1–107. North Vernon appeals, arguing I.C. 36–1–3–8(7), I.C. 8–6–7–1, and I.C. 8–6–7.7–2 do not preempt the entire field of railroad crossing safety and cities are permitted to legislate additional safety requirements, including watchmen, and that the language "any grade crossing in the state" contained in I.C. 8–6–7–1 refers only to grade crossings on state highways and excludes those under local jurisdictions.

We affirm.

### FACTS

North Vernon is a municipal corporation as defined by I.C. 36–1–2–11. The Baltimore and Ohio Railroad Company operates two separate rail lines through North Vernon. Both tracks run east and west. The first crosses Madison Street; the second crosses Fifth Street.

On December 9, 1898, North Vernon's Common Council passed an ordinance requiring the maintenance of flagmen to warn travelers of danger from passing trains at the Fifth Street and Madison Street crossings.[1] On April 11, 1942, the

---

Corinne R. Finnerty, North Vernon, for appellant.

1. NORTH VERNON'S 1898 ORDINANCE provides, omitting formal parts, in pertinent part as follows:

"Sec. 5. It shall be the duty of any railway company whose railway track crosses or inter-sects Fifth Street in said City, where the same crosses Railroad Avenue in said City, or that crosses or intersects State Street in said City between Walnut and Chestnut streets, or that crosses or intersections Madison Street in said

North Vernon Common Council passed Ordinance 152 making it mandatory for the Railroad to maintain 24 hour watchmen service at the Fifth Street Crossing and imposing a $10.00 fine for each 24 hours period in which the Railroad fails to provide 24 hour watchman service.[2] On August 27, 1984, Ordinance No. 152 was amended by Ordinance No. 599, increasing the penalty for violation thereof to $2,500.00 per 24 hour period.[3] City law

enforcement officers advised the Railroad that it would be prosecuted to the full extent of the law if the Railroad failed to provide 24 hour crossing watchmean service at the Fifth Street and Madison Street crossings.

The Railroad filed a petition before the Public Service Commission requesting installation of automatic gates and signals at the two crossings, and the City presented evidence in opposition to the petition. No

City, where the same crosses Railroad Avenue, or that crosses or intersects Hoosier Street in said City between Fourth Street and Madison Street, or that crosses or intersects Hoosier Street where the same crosses Madison Street, to provide and maintain a flagman at such point or points to warn travelers and citizens of danger from passing trains. Any railway company found guilty of violating the provisions of this section or any of them shall, on conviction, be fined five dollars for each day it so fails to comply with the requirements thereof." (emphasis added).

2. NORTH VERNON'S 1942 ORDINANCE, ORDINANCE NO. 152, provides, in pertinent part, as follows:

"ORDINANCE MAKING IT MANDATORY FOR THE B. & O. RAILROAD TO INSTALL 24 HOUR WATCHMAN SERVICE AT 5TH STREET AND WALNUT STREET CROSSINGS.
WHEREAS, the Common Council of the City of North Vernon, Indiana, has deemed it necessary on account of the general Public safety to demand that the B. & O. W.S. Railroad install 24 hour crossing watchman service at certain points in said City.
NOW, THEREFORE, BE IT ORDAINED BY THE COMMON COUNCIL of the City of North Vernon, that an urgent, immediate, and indispensable necessity and emergency exists for the appointment and use of 24 hour crossing watchman service in said City of North Vernon, Indiana, at the following locations in said City, to-wit:
At that point in said City where the B. & O. S.W. Railroad tracks crossed Fifth Street in said City, said point commonly being know [sic] as the Fifth Street Crossing;
ALSO, at that point in said City where said Railroad tracks cross Walnut and State Streets in said City said point commonly being known as the Walnut and/or State Street Crossing in said City.
Be it further ordained by said Common Council, that for each and every 24 hour period that said Railroad Company fails to appoint and/or to provide and furnish such 24 hour crossing watchman service there shall be assessed a fine against said Company in the amount of $10.00 per each 24 hour period.

This ordinance shall be in full force and effect from and after its passage and adoption by the Common Council and two weeks publication in the Plain Dealer–Republican news, a newspaper of general circulation, printed and published in the said City of North Vernon, Indiana.
Passed and adopted by the Common Council of the City of North Vernon, Indiana, at its regular session, this 11th day of April, 1942." (emphasis added.)

3. NORTH VERNON'S 1984 ORDINANCE, ORDINANCE NO. 599, provides, omitting formal parts, as follows:
"ORDINANCE NO. *599*
An Ordinance Amending Ordinance Number 152 by Increasing the Fine to Be Levied for its *Violation to $2,500 per 24 Hour Period.*
WHEREAS, the Common Council of the City of North Vernon, Indiana, has deemed it necessary on account of the general public safety to demand that the B. & O. S.W. Railroad and its successors in interest install 24 hour crossing watchman service at certain points in said City and has done so in the provisions of Present Ordinance No. 152, and,
WHEREAS, the Common Council of the City of North Vernon, Indiana, has deemed it necessary on account of the general public safety to increase the fine to be levied for violation of said ordinance;
NOW THEREFORE BE IT Ordained By the Common Council of the City of North Vernon, Indiana, that Ordinance Number 152 be and it hereby is amended in part to read as follows:
'Be it further ordained by said Common Council, that for each and every 24 hour period that said Railroad Company or its successors in interest fail to appoint and/or provide and furnish such 24 hour crossing watchman service there shall be assessed a fine against said Company in the amount of Twenty-Five Hundred Dollars ($2,500.00) per each 24 hour period.'
This ordinance shall be in full force and effect from and after its passage and adoption by the Common Council of the City of North Vernon, Indiana, and its publication pursuant to I.C. 5–3–1 *et seq.*
Passed and adopted by the Common Council of the City of North Vernon, Indiana, at its regular session this 27 day of August, 1984."

action has been taken by the Public Service Commission.

The Railroad then filed this declaratory judgment action seeking to enjoin the City from enforcing the three ordinances. The trial court entered judgment for the Railroad, declaring the three ordinances void and without force of law because the power to regulate the manner in which citizens are warned of danger from passing trains has been preempted from municipalities and placed with the Indiana Public Service Commission pursuant to I.C. 8–6–7–1 [4] and I.C. 8–6–7.7–2 [5] except as delegated to local authorities pursuant to I.C. 9–4–1–107. [6] The trial court ruled that North Vernon may only erect stop or yield signs at crossings after a designation of "particularly dangerous" has been made pursuant to the Uniform Act Regulating Traffic on Highways, I.C. 9–4–1–107.

### Issue

The City presents a single question of law, consolidated and restated, on appeal:

Whether the trial court erred in ruling, as a matter of law, that the three City ordinances (Ordinance of December 9, 1898; Ordinance 152; and Ordinance 599)

were void and not binding upon the Railroad because these ordinances contravene I.C. 36–1–3–8(7) which preempts the power to regulate the manner in which travelers shall be warned of danger from passing trains from municipalities and vests this power exclusively with the Public Service Commission under I.C. 8–6–7–1 and I.C. 8–6–7.7–2, except as delegated to local authorities under I.C. 9–4–1–107.

### DECISION

The City challenges the trial court's decision on two grounds. First, the City argues I.C. 36–1–3–8(7), I.C. 8–6–7–1 and I.C. 8–6–7.7–2 do not preempt the entire field of railroad safety. The City claims these statutes deal with installation of automatic train-activated warning signals and do not preclude municipalities from legislating additional safety requirements, including watchmen. Next, the City asserts the language of I.C. 8–6–7–1, "any grade crossing in the state", refers to grade crossings on state highways only and does not include grade crossings under local jurisdiction. The Railroad argues the trial court's deci-

---

**4.** I.C. 8–6–7–1 provides in part: The Public Service Commission of Indiana *shall have the exclusive power and it shall be its duty,* upon proper petition by any five (5) or more citizens of this state or the board of county commissioners of any county of this state to conduct a hearing to declare as dangerous or extra hazardous any grade crossing in this state which said commission shall find to be of such a character as that the safety of the users of such highway requires the installation of automatic train-activated warning signals or other crossing safety devices.

Such petition, hearing and all proceedings thereon shall be in conformity with the law governing petitions, hearings and proceedings before said commission in regard to rates and services of public utilities. (emphasis added).

**5.** I.C. 8–6–7.7–2 provides as follows: The Public Service Commission of Indiana, in authorizing the construction of any new grade crossing under the provisions of 8–6–1–7, shall have authority to order the installation of automatic train-activated warning signals at such crossing. The commission shall have further authority to order the installation, replacement, relocation, modernization or improvement of automatic

train-activated warning signals at any grade crossing in the state in existence at the time the commission may issue such an order. *The authority of the commission* to require the installation of such signals *shall be exclusive, and shall supersede such power of any other state or local governmental agency.* (emphasis added).

**6.** I.C. 9–4–1–107 states: Designating dangerous railroad grade crossings—Erection of yield or stop signs.—The state highway commission, with reference to state highways and highway routes through cities, and local authorities, with reference to other highways under their jurisdiction, may designate particularly dangerous highway grade crossings of railroads. Notwithstanding the provisions of section 31 and 32 [9–4–1–31 and 9–4–1–32] of this chapter requiring conformance with a manual of uniform traffic control devices, the commission or appropriate local agency shall erect either a yield or stop sign on the street or highway right-of-way approaching the designated crossing. When such stop signs are erected, the driver of any vehicle shall stop within fifty feet (50') but not less than ten feet (10') from the nearest tract of such grade crossing and shall proceed only upon exercising due care. (emphasis added).

sion is correct and relies upon the statutes' specific language and history.

## A. *Preemption*

It is undisputed that the City is a unit and governed by the provisions of I.C. 36–1–3–8, which state:

"A unit does not have the following: ... (7) The power to regulate conduct that is regulated by a state agency, except as expressly granted by statute."

It is also undisputed that the Public Service Commission is a state agency as contemplated by this statute. We must now consider whether the activity the City is seeking to regulate by the three ordinances set forth above is an activity regulated by the Public Service Commission.

The City argues I.C. 8–6–7–1 and I.C. 8–6–7.7–2 give the Public Service Commission power to regulate only mechanical devices and not general safety at railroad crossings. We disagree and need not decide whether the statutes at issue preempt all local legislation regarding general safety at railroad crossings. We find the legislature intended these two statutes, by their own language, to vest exclusive authority in the Public Service Commission to regulate the manner in which travelers are warned of the approach of train traffic at grade crossings within the State of Indiana, and to require installation of automatic and other warning signals, and not to regulate merely mechanical devices used to accomplish this purpose. I.C. 8–6–7–1 states "the Public Service Commission *shall* have the *exclusive power* and it shall be its duty" to conduct hearings and declare as dangerous any grade crossing within the state which it finds to be so. I.C. 8–6–7.7–2 states "The authority of the commission to require installation of such signal *shall be exclusive* and *shall supersede such power of any other state or local government agency.*" By the express terms of these two statutes, the leg-

islature has vested power exclusively in the Public Service Commission to investigate the need for warning measures and to require extraordinary warning measures be taken at railroad crossings. The regulation of watchmen or flagmen, at the crossings, for the purpose of warning motorists or pedestrians of approaching trains, falls within the exclusive authority of the Public Service Commission. The fact that the statute no longer specifically mentions a watchman or flagman as an alternative means of providing the warning of the approach of train traffic to travelers simply reflects the fact that this is no longer viewed, by state government or the railroad industry, as a viable means of warning in this day and age.[7] In addition, this is the only conclusion that makes sense if railroads engaging in interstate commerce within the State of Indiana are to have some reasonable expectation of how their conduct will be governed.

## B. *Grade Crossing*

Alternately, the City argues I.C. 36–1–2–8(7) and I.C. 8–6–7–1 do not preempt ordinances requiring watchmen at railroad crossings because the language "any grade crossing in the state" contained in I.C. 8–6–7–1 refers only to grade crossings on state highways and excludes crossings on highways under local jurisdiction.

As originally enacted by Acts 1931, I.C. 8–6–7–1 provided:

"That any grade crossing in this state, *outside of cities and towns,* ... found to be extra-hazardous, may be so designated by the public service commission, and, unless a watchman is stationed at such grade crossing so designated as extra-hazardous, such standard stop signs, or any other modern automatic safety crossing devices as the commission may determine to be necessary shall be installed and maintained at such grade crossings."

---

7. We note that our sister jurisdiction of Illinois reached this same conclusion over fifty years ago. In *Village of Atwood v. Cincinnati, Indianapolis & Western Railroad Company,* (1925) 316 Ill. 425, 147 N.E. 449, it was held by the Supreme Court of Illinois that the Illinois General Assembly, in its discretion, withdrew from cities the power to require railroad companies to keep flagmen at railroad crossings and vested such power in the Commerce Commission.

(emphasis added). *See*, Historical Note in West's Annotated Indiana Code, I.C. 8–6–7–1.

The present statute does not include the language "outside of cities and towns" because the legislature removed this language when amending the statute in 1935. In addition, the legislature defined "grade crossing" in 1973 by the addition of I.C. 8–6–7.7–1 to our code: "The term 'grade crossing' as used in this chapter means a crossing of any railroad and any public highway, street, or roadway, at grade." We conclude that "any grade crossing in the state" includes grade crossing on both state and local public highways.

If North Vernon city officials feel that the crossings in question are of such dangerous character as to require crossing watchmen, their remedy is not to preempt the power of the Public Service Commission of Indiana, but to seek to convince said commission of the efficacy of their position at an appropriate proceeding. As their ordinances attempt such preemption, they were appropriately struck down by the trial court.

The judgment of the trial court is affirmed.

SULLIVAN and YOUNG, JJ., concur.