Bobby G. **WITHAM**, Guardian of the Estate and Person of Eddie G. Witham, and Bobby G. Witham and Betty D. Witham, Individually, Plaintiffs–Appellants,

v.

**NORFOLK AND WESTERN RAILWAY COMPANY**, Consolidated Rail Corporation, Andrew Dooley and R.D. Martin, Defendants–Appellees.

No. 41A04–8802–CV–63.

Court of Appeals of Indiana, Fourth District.

March 20, 1989.

Jerome Mirza, Bloomington, Ill., Thomas E. Hamer, Anderson, for plaintiffs-appellants.

Nicholas C. Nizamoff, Cynthia L. Wodock, White & Raub, Indianapolis, for defendants-appellees.

MILLER, Judge.

Eddie G. Witham [Eddie] was severely and permanently injured when he disregarded flashing signals and the automobile he was driving was struck by a Conrail train at a crossing owned by the Norfolk and Western Railway [N & W]. We will refer to the defendants collectively as the Railroad, when appropriate. Witham's guardian and father, Bobby G. Witham, brought suit on behalf of Eddie and for loss of services suffered by himself and Eddie's mother, Betty D. Witham, against N & W, Conrail, and members of the train's crew. After extensive discovery, the Railroad filed a Motion for Summary Judgment which was granted. Witham appeals the grant of summary judgment asserting the trial court erred in determining Eddie was guilty of contributory negligence as a matter of law. He also claims that, even if Eddie were contributorily negligent, such negligence would not bar recovery if the Railroad was guilty of willful and wanton misconduct and that the trial court erred in determining the Railroad was not guilty of such misconduct as a matter of law.

We affirm.

## FACTS

On Saturday, April 9, 1983 at approximately 11:00 a.m. Eddie Witham was westbound on U.S. 36 in Mt. Summit, Indiana. The N & W tracks crossed U.S. 36. The crossing was controlled by automatic flasher signals. As Eddie approached the crossing, the flashers were operating. He was a few car lengths ahead of a vehicle occupied by Ronald D. Poindexter, his wife, Carol Ann Poindexter, and their friend Chester Claborn. The occupants of the Poindexter vehicle testified in depositions, that Eddie was driving between 20 and 30 m.p.h. (within the speed limit) and braked as he approached the crossing. He stopped with the front of his car either on the tracks or a short distance from the tracks. Almost simultaneously with his stop[1] his vehicle was struck by a southbound Conrail train which was traveling approximately 53 m.p.h. The witnesses heard the train's whistle at the same time or a second before the crash. As a result of the collision, Eddie suffered brain damage leaving him quadraplegic and unable to speak.

Numerous witnesses testified by deposition or affidavit the flashers at this crossing frequently malfunctioned by flashing when *no train was in the area.* According to the witnesses this malfunction occurred repeatedly for a period of many years. On the two days immediately preceding the day of the accident the signals were flashing when no train was present. The Poindexters and Claborn testified that when they crossed the track from the opposite direction earlier on the morning of the accident the signals were flashing but no train was present.

Eddie was home on leave from the military. He grew up in the area and was familiar with the crossing. He had crossed the tracks at least once on the previous evening.

N & W was responsible for the maintenance of the warning signals. The signals were activated by a motion sensor. The sensor was affected by weather conditions and could be reset to accomodate changes caused by differences in the amount of moisture present. In wet weather the sensors would sometimes activate when no train was present. Its maintenance records showed the signals were checked visually once a week and tested every other

1. The witnesses' estimates varied from less than a second to one or two seconds.

week. During the week immediately preceding the accident, the signals were checked on April 4th, 5th and 7th. On April 4th and 7th the flashers were operating when no train was present and were reset by the signal maintainer.

## DECISION

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and testimony, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C); *Crull v. Platt* (1984), Ind.App., 471 N.E.2d 1211. Any doubt as to the existence of a genuine issue of material fact must be resolved in favor of the nonmovant. *Mogan v. Southern Indiana Bank & Trust Co.* (1985), Ind.App., 473 N.E.2d 158. All reasonable inferences must be resolved against the moving party. *Boswell v. Lyon* (1980), Ind.App., 401 N.E.2d 735.

■ Although summary judgment is rarely appropriate in negligence actions, when the facts are undisputed and support only the conclusion the plaintiff was contributorily negligent, such a finding may be entered as a matter of law. *Law v. Yukon Delta, Inc.* (1984), Ind.App., 458 N.E.2d 677; *Pontious v. Littleton* (1970), 146 Ind. App. 369, 255 N.E.2d 684. This cause of action arose before the Comparative Fault Act[2] was enacted, therefore contributory negligence is a complete bar to recovery. *Law, supra.*

Witham asserts the trial court erred in determining Eddie was contributorily negligent as a matter of law based on its following conclusions of law:

"2. At the time of the collision, there was in effect in the State of Indiana a statute which provided:

9-4-1-106. Obedience to Signal Indicating Approach of Train—

Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within fifty feet [50'] but not less than ten feet [10'] from the nearest track of such railroad and shall not proceed until he can do so safely, when:

(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train.

(b) A crossing gate is lowered or when a human flagman gives or continues to give the signal of the approach or passage of a train.

(c) A railroad train, as defined in this Act [9–14–1–1—9–4–1–136], approaching within approximately one thousand five hundred feet [1,500'] of a highway crossing emits a signal audible for such distance and such train, by reason of its speed or nearness to such crossing, is an immediate hazard.

(d) An approaching train is plainly visible and is in hazardous proximity to such crossing. [Acts 1939, ch. 48, 100, 289.]

3. Eddie G. Witham did not comply with the provisions of I.C. 9–4–1–106 and was contributorily negligent as a matter of law.

4. Eddie G. Witham's failure to comply with the statute was a proximate cause of the collision and his resulting injuries.

5. The undisputed material facts establish that Eddie G. Witham was not excused from complying with his statutory duties, and other duties imposed upon him by law, and was not justified in his failure to comply with his statutory duties, and other duties imposed upon him by law.

■ Proof of the violation of a safety statute creates a rebuttable presumption of negligence. *Thorton v. Pender* (1978), 268 Ind. 540, 377 N.E.2d 613. Witham does not deny Eddie failed to stop his vehicle "within fifty feet but not less than ten feet from the nearest track," but argues there are genuine issues of material fact concerning whether the signal "gave warning" of the approach of the train.[3] Relying on the

2. IND.CODE 34–4–33–1 to 14.

3. The dissent suggests there was a genuine issue of material fact concerning Eddie's violation of the statute based on Poindexter's testimony Ed-

depositions of two safety experts, he argues the frequent malfunction of the signals diminished the general level of warning given by the signals, so that the flashers were equivalent to a crossing where only crossbucks existed. Therefore, he argues IND.CODE § 9-4-1-106(a) does not apply, and there are genuine factual questions in regard to whether Eddie violated paragraphs (c) and (d).[4]

Witham relies on *Consolidated Rail Corp. v. Thomas* (1984), Ind.App., 463 N.E. 2d 315 (where plaintiff Thomas recovered a jury verdict for injuries received in a car/train accident) for the proposition that the fact the signals were operating does not necessarily mean that the warning described in the statute was provided. However, *Consolidated Rail* is factually distinguishable from the case at bar. In *Consolidated Rail*, plaintiff Thomas was in the far right lane of a five lane, east/west highway which crossed four sets of tracks. The tracks at the crossing ran northwest and southwest intersecting the street at a forty-five degree angle. The two easterly sets of tracks were owned and maintained by N & W and the two westerly tracks were owned and maintained by Conrail. Thomas was driving in a westerly direction and thus would cross the N & W tracks first and then the Conrail tracks. There was a space of 119 feet between N & W's tracks and Conrail's tracks. N & W maintained warning signals and a crossing gate on the east side of the crossing to stop traffic approaching from the east. Conrail had similar warning signals on the west side of the crossing. When Thomas entered the crossing the N & W signals were not flashing and the gate was not down. Then, as described by the court, the following occurred.

"Thomas approached this crossing from the east at 12:45 a.m. on April 9, 1978. He observed that the N & W signals were not flashing and that the gate was not down. He passed over the N & W tracks and drove toward the Conrail tracks at approximately 20 miles per hour. At this time, a Conrail train was approaching the crossing from the northwest on the westernmost Conrail track, traveling at ten to twelve miles per hour. The train thus came toward Thomas from his right, at a forty-five degree angle from his line of sight. Thomas testified that, because the N & W signal was not activated, he was not looking for a train. His car hit the front of Conrail's lead engine, and Thomas suffered severe injuries to his jaw and right leg. . . .
The N & W signals facing Thomas as he entered the crossing were not working. Conrail's employees testified, however, that the Conrail signals and gate on the west side of the crossing were working. These signals included flashers focused toward traffic coming toward the crossing both from the east and from the west. Thomas said he did not notice the Conrail gate on the far side of the crossing from him because it was far to his left, across four lanes. Thomas also said eastbound traffic was coming toward him as he entered the crossing. The warning bell on Conrail's signal was ringing, but Thomas said a nearby factory made the area a noisy one." *Id.* at 317.

The court rejected Conrail's contention that Thomas acted unreasonably under the circumstances as follows:

"Nor can we say that the warnings of the train's approach were such that no reasonable person could have been un-

die's car had not cleared the white stop bar, which according to the Railroad's brief was eighteen to twenty feet from the track. Witham never argued in his motion to correct errors, his brief in opposition to summary judgment or his appellate brief, that Eddie was not in violation of the statute because he had stopped more than ten feet from the tracks. On appeal, the appellant has the burden of showing reversible error. *Raymundo v. Hammond Clinic Association* (1983), Ind., 449 N.E.2d 276. We need not

search the record—here including numerous lengthy depositions—to find possible error not suggested by the appellant. *Id.; Matter of Trust of Loeb* (1986), Ind.App., 492 N.E.2d 40.

**4.** We agree there are factual questions in regard to whether Eddie violated paragraphs (c) or (d) of the statute, however because we hold he violated paragraph (a) we need not discuss this issue.

aware a train was coming. Evidence at trial showed that the N & W crossing gate and signal governing Thomas's lane of travel were not working when Thomas entered the four-track crossing. There was evidence that Conrail's own signal flashers, located on either side of the road on the side of the four-track crossing opposite Thomas as he approached, were working. There was no clear testimony, however, that the Conrail signal on Thomas's side of the road was flashing. The other Conrail signal, attached to a gate governing eastbound traffic, was undeniably working. There is some doubt, however, whether Thomas should reasonably have seen it. Thomas testified that eastbound traffic was coming toward him as he entered the crossing. The headlights of these cars might have made the Conrail signal to Thomas's left hard to see. Moreover, this signal was on the far side of a five lane road from Thomas. Thus, Thomas's failure to notice this signal and heed its warning was arguably not unreasonable under the circumstances...." *Id.* at 321.

Further, the court specifically addressed Conrail's contention that Thomas was contributorily negligent *per se* because he violated IND.CODE 9-4-1-106(a), the statute here in question, which requires a vehicle to stop when "a clearly visible electric or mechanical signal device gives warning of the immediate approach of a train." The court stated that, based on the facts, "there was room for doubt whether any of the four signal flashers was 'clearly visible' and 'gave warning' that a train was coming within the meaning of subsection (a)." *Id.* at 322. Returning to the case before us it is apparent the *Consolidated Rail* case is distinguishable, because of the question of whether the signal flashers in *Consolidated Rail* were clearly visible. Here, there is no dispute the flashers on Eddie's side of the track were operating and clearly visible.

Witham also cites *Rice v. Southern Pacific Company* (1967), 247 Cal.App.2d 701,

55 Cal.Rptr. 840, a case involving a nearly identical fact situation and statute. The *Rice* court, relying in part on a presumption recognized by California law that a person takes ordinary care of his own concerns, held it was a question of fact whether the plaintiff's decedent was contributorily negligent. The court also considered the statutory violation in *dictum* [5] and noted there was a presumption the decedent had complied with the statute and there was conflict in the evidence in regard to whether the decedent stopped and whether the malfunctioning signal actually gave warning of the approach of the train.

*Rice* lends support to Witham's argument. However our appellate court, also in *dictum*, rejected this interpretation in *Wabash R. Co. v. McNown* (1912), 53 Ind.App. 116, 99 N.E. 126. In that case, the plaintiff's decedent, a passenger in a horse-drawn hack was killed when she was thrown from the hack into the path of the defendant's train. The crossing was controlled by an electric bell which was ringing when the hack approached the crossing. The bell had been ringing continuously for several days whether or not a train was present. The hack driver was aware of the previous malfunctions and did not stop. When the driver saw the train he whipped the horses and cleared the track, but his passenger was thrown out. The court affirmed a jury verdict against the railroad and the hack driver, and noted: "Such facts would by no means have justified the hack driver in his attempt to cross such track, or relieved him or his master from negligence proximately causing the death...." [6] *Id.* 99 N.E. at 132.

Decisions in other jurisdictions also support this view. In *Getman v. Indiana Harbor Belt Railroad Co.* (1988), 172 Ill. App.3d 297, 122 Ill.Dec. 298, 526 N.E.2d 557, the court refused to vacate a summary judgment for the railroad. The plaintiff drove onto the tracks when the flashers were operating and was struck by defendant's train. He presented affidavits alleging the flashers frequently malfunctioned

---

**5.** The issue of a statutory violation was not raised in the trial court or on appeal.

**6.** The issue before the court was the railroad's negligence; the hack driver did not appeal.

by flashing when no train was present. Although the court affirmed on the basis the affidavits were not timely filed, it noted:

"The testimony of the frequent malfunctioning of the warning signals is primarily relevant to the instant case to show that plaintiff's prior knowledge of the malfunction put him on notice that he could not rely on the warning signals as an indicator of the crossing's safety and, therefore, must exercise ordinary care. It is uncontested that the malfunctioning of the warning signals did not cause the collision at issue. No evidence was presented establishing the IHB had acted or failed to act in a manner which obstructed plaintiff's exercise of care for his own safety. Thus, the admission of the affidavits would not have evidenced the existence of a genuine issue of material fact nor warranted the vacation of the summary judgment.

*Id.* 122 Ill.Dec. at 302, 526 N.E.2d at 561.

In *McDowell v. Chicago, St. Pac. R. Co.* (8th Cir.1974), 507 F.2d 5, the court, applying Iowa law to a similar factual situation, discussed the effect of violation of a nearly identical statute. After noting violation of the statute was negligence *per se*, the court stated:

"The circumstance that the gate was down and the signal was operating frequently when no train was approaching, such as when a repair train was parked near the crossing, does not constitute a legal excuse as defined by Iowa law for not heeding a proper automatic signal when a train is in fact approaching.

It is well-established Iowa law that a motorist approaching a known railroad crossing must exercise care for his safety and must look and listen for approaching trains before crossing the track. *See Van Patten [v. Chicago], supra,* [251 Iowa 1221, 102 N.W.2d 898 (1960)] and cases cited,102 N.W.2d at 905. Here the evidence discloses that the decedent by looking could have observed the approaching train a considerable distance away. The closed gate certainly was not an invitation to the decedent to proceed across the tracks without exercising any caution for his own safety."

*Id.* at 8.

In addition, the presumption of negligence created by the violation of the statute is not rebutted by evidence the signals were malfunctioning. In order to rebut the presumption of negligence, the person who violated the statute must show "he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, *who desired to comply with the law.*" (Our emphasis) *Davison v. Williams* (1968), 251 Ind. 448, 457, 242 N.E.2d 101, 105. There was no evidence Eddie was prevented from stopping had he desired to do so (e.g. that his brakes had failed).

We conclude there is no genuine issue of material fact and the facts lead to but one conclusion: Eddie was contributorily negligent in failing to stop his vehicle in accordance with IND.CODE § 9–4–1–106(a).

■ A plaintiff's contributory negligence is not a bar to recovery, if the defendant intentionally causes the injury or is guilty of willful and wanton misconduct. *See* 57 *Am.Jr.2d, Negligence* § 305; *Restatement (Second) of Torts* §§ 500, 503. In *Louisville N.A. & C.R. Co. v. Ader* (1887), 110 Ind. 376, 11 N.E. 437 our supreme court indicated that contributory negligence would not bar recovery if the defendant was guilty of willful and wanton misconduct.[7]

■ Witham claims the trial court erred in concluding the Railroad was not guilty of willful and wanton misconduct as a matter of law. To be guilty of willful and wanton misconduct "the defendant must have knowledge of an *impending* danger or have been conscious of a course of conduct calculated to result in *probable* injury." *Conder v. Hull Lift Truck, Inc.* (1980), Ind.App., 405 N.E.2d 538, 547. His conduct must exhibit an indifference or a

---

**7.** In some jurisdictions contributory negligence is not a defense only if the injury is intentional.

*See* 57 *Am.Jur.2d, Negligence* § 305.

reckless disregard for the consequences of his actions. *Clouse v. Peden* (1962), 243 Ind. 390, 186 N.E.2d 1; *Baltimore & O.S.R. Co. v. Reynolds* (1904), 33 Ind.App. 219, 71 N.E. 250.

The facts most favorable to Witham indicate the flashers frequently malfunctioned, were malfunctioning the day before and the morning of the accident and Eddie was aware of the malfunction. It can be inferred the train's whistle was not sounded for the required statutory distance. Witham, relying on the deposition testimony of his expert, John E. Baerwald, also asserts the flashers provided inadequate warning at this crossing because of the malfunctions and the Railroad was negligent in failing to install crossing gates. He asserts these facts were sufficient to present a factual question concerning willful and wanton misconduct on the part of the Railroad.

Initially we note, we are dealing with alleged misconduct on the part of two defendants, Conrail [8] and N & W. Witham asserts N & W was guilty of willful and wanton misconduct in failing to repair the malfunctioning signals and failing to install crossing gates and Conrail was guilty of such misconduct in failing to sound the whistle in accordance with the statutory requirements when it "must have known"

of the malfunctioning signals. Witham suggests the cumulative effect of these omissions creates an inference of willful and wanton misconduct.[9]

Turning first to N & W's alleged willful misconduct we note, in Indiana, that the department of transportation has exclusive authority to order installation of automatic warning signals. IND.CODE 8–6–7.-7–2 (1988 Supp.) *City of North Vernon v. Baltimore & O.R. Co.* (1986), Ind.App., 500 N.E.2d 1238. A railroad cannot be held negligent solely for the failure to erect safeguards not required by law. *Pennsylvania R. Co. v. Sherron* (1952), 230 Ind. 610, 105 N.E.2d 334. However, the lack of adequate safeguards may be considered in determining whether the railroad exercised reasonable care in the operation of its train. *Id.; Indianapolis Union Ry. v. Walker* (1974), 162 Ind.App. 166, 318 N.E. 2d 578. N & W was not operating the train involved in the accident. Its failure to erect a crossing gate, even if the flashers were inadequate, cannot be termed negligence, much less willful misconduct.

N & W could not have known Conrail would not give the statutory warning. Therefore, its misconduct must rest solely on the failure to correct the malfunctioning signals. The undisputed facts fail to estab-

---

**8.** For the purposes of our discussion we will treat the alleged misconduct of the train crew as Conrail's misconduct under the doctrine of *respondent superior.*

**9.** Witham relies on *Gushen v. Penn Central Transportation Co.* (1971), Del., 280 A.2d 708 to support his argument such acts or omissions were willful and wanton misconduct. In *Gushen* the visibility of the tracks was obscured by banks of earth on both sides of the road. There were three tracks and the road bed across the tracks was in such bad condition vehicles could only cross safely at a speed of two or three m.p.h. An average of fifty trains used the crossing per day. The flashers at the crossing had been malfunctioning by flashing when no train was present for over a year. The plaintiff was struck by one train and thrown into a second train. Both trains were operating at a speed of approximately 80 m.p.h. The tracks and both trains were owned and maintained by the same railroad. The railroad had received numerous complaints concerning the condition of the crossing, but had done nothing to correct the

situation. The court held under the facts presented it was a question of fact whether the railroad was guilty of willful and wanton misconduct.

The condition of the crossing in *Gushen* was far worse than in the case at bar. Here, there was no evidence the road bed was in poor condition. The visibility (although disputed) was good at approximately 18 feet from the track according to Witham's expert, Rudolph G. Mortimer. A smaller number of trains (eleven per day versus fifty) used the crossing. The railroad, in *Gushen*, had done *nothing* to correct the situation. Here, the undisputed facts show N & W regularly maintained the signals and had checked them three times in the week immediately preceding the accident and adjusted the signals on two of those occasions. In addition, in *Gushen* the crossing and the trains involved in the accident were owned, maintained and operated by the same railroad. The facts in *Gushen* are not sufficiently similar to the facts in this case to require this court to find a factual question existed concerning willful and wanton misconduct.

lish a reckless disregard of consequences—on the contrary the facts show N & W regularly inspected the signals and made necessary repairs.

Similarly, there was no evidence Conrail knew the flashers were malfunctioning, therefore its misconduct was based solely on the alleged failure to sound the whistle as required by statute. Failure to sound a whistle as required by statute has been held to be negligence, not willfullness. *Bailey v. Martz* (1986), Ind.App., 488 N.E. 2d 716; *Smith v. Chesapeake & Ohio R.R.* (1974), 160 Ind.App. 256, 311 N.E.2d 462.

Even if the omissions of both railroads were cumulative, the effect of such omissions would not rise to the level of willful misconduct. There was no evidence to indicate the railroads were aware of *impending* danger or that their misconduct would result in *probable* injury. A party has a right to assume others will exercise reasonable care, unless he has notice to the contrary. *Brock v. Walton* (1983), Ind. App., 456 N.E.2d 1087. Eddie had a duty to exercise due care for his safety and a statutorily imposed duty to stop more than ten feet from the tracks. The Railroad had the right to assume he would do so.

In *Ullrich v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1898), 151 Ind. 358, 51 N.E. 95, the court held a railroad was not guilty of willful misconduct when the engineer saw the plaintiff on a trestle from which there was no escape except from either end. The plaintiff was 200 feet from one end of the trestle and 100 feet from the other. The engineer saw the plaintiff when the train was approximately 2000 feet away, but did not try to stop until it was much closer. The court held the engineer had a right to assume the plaintiff would clear the track before the train reached him. In *Baltimore & O.S.W. R. Co. v. Reyher* (1939), 216 Ind. 545, 24 N.E.2d 284 the court held the railroad was not guilty of willful and wanton misconduct when the train was being operated more than 45 m.p.h. above the speed limit and there was conflicting evidence whether the whistle and bells were sounded in accordance with statutory requirements. Here,

any misconduct on the part of the Railroad was significantly less serious than in the cases cited.

The trial court did not err in finding the Railroad was not guilty of willful and wanton misconduct as a matter of law.

AFFIRMED.

STATON, J. concurs.

CONOVER, P.J., dissents with separate opinion.

CONOVER, Presiding Judge, dissenting.

I respectfully dissent. There are factual disputes here present which must be resolved by a jury.

For instance, Ronald D. Poindexter (Poindexter) an occupant in the car following Eddie Witham that day testified in his deposition when Eddie stopped his car, it was straddling the white stop bar painted on the highway just before the railroad crossing. (Poindexter dep., p. 32). The railroad's brief concedes the stop bar was 18 to 20 feet from the crossing. On the other hand, Chester Clyborn, a passenger in Poindexter's car, testified Eddie stopped on the tracks.

Next, the flasher question. The railroad has a statutory duty to maintain automatic warning signals, IND.CODE 8–6–7.7–4. When a crossing is extra hazardous, a railroad can be found negligent for failure to provide warnings and take safety precautions beyond those required by statute and without a Public Service Commission determination the crossing is extra hazardous. *Wells v. Baltimore & Ohio RR Co.* (1977), 173 Ind.App. 227, 363 N.E.2d 1001, 1003–1004; *Stevens v. Norfolk & Western RR Co.* (1976), 171 Ind.App. 334, 357 N.E.2d 1, 4. The question of whether a railroad crossing is extra hazardous should be left to the jury. *Central Indiana RR Co. v. Anderson Banking Co.* (1969), 252 Ind. 270, 247 N.E.2d 208, 211.

Here, the crossing flashers had been malfunctioning for many years. They often flashed when no train was in the area. In fact, Eddie saw the flashers malfunctioning the day before the accident. The

railroad had been specially notified of their malfunctioning 24 hours before the collision. One witness testified Eddie's exposure to the malfunctioning flashers modified his perception of their meaning and gave "him an indication that it was also likely that there was no train on this occasion." (Mortimer dep., p. 34–35). Another witness testified the flashing lights "were inadequate to give adequate notice to an oncoming motorist of the approach of a train." (Baerwald dep., p. 117). Mortimer also testified Eddie acted prudently and began to decelerate as he approached the crossing. (Mortimer dep., pp. 33–35).

There is also a factual dispute as to whether the view from the crossing was obstructed. On this subject, Mortimer testified

> Well, I mentioned buildings. But closer to the crossing than that are trees, foliage, bushes, this sort of thing off to the right. It's important also to consider the sight restrictions to the south because the train could be coming from the south or from the north, and the driver after all doesn't know that during the approach. (Mortimer Dep., p. 60).

Next, there is a factual dispute as to whether the bell and whistle were being rung and blown as required by statute. Poindexter heard the train's whistle at the time of the crash or a second before it. Dooley, the engineer of the train, testified he began to sound his whistle 1500 feet from the crossing. A locomotive must ring its bell continuously within one quarter mile of a railroad crossing and blow its whistle at least 4 times within one quarter mile of a crossing. I.C. 8–6–4–1. Failure of a railroad to comply with these statutorily-prescribed duties constitutes negligence per se. *Smith v. Chesapeake & Ohio RR Co.* (1974), 160 Ind.App. 256, 311 N.E.2d 462, 469; *Callahan v. New York Central RR Co.* (1955), 125 Ind.App. 631, 125 N.E.2d 263, 268; *Chicago & E.I.R. Co. v. Alexander* (1955), 126 Ind.App. 75, 125 N.E.2d 171, 174.

In *Lake Erie & W.R. Co. v. McFarren* (1919), 188 Ind. 113, 122 N.E. 330, the railroad failed to ring its bell as the train approached a crossing. Plaintiff who had driven his team of horses onto the railroad crossing was struck by the oncoming train. Our Supreme Court found the question of contributory negligence was one for the jury. Justice Willoughby, writing for the majority, said

> The case before us belongs to the class in which railroad companies are held responsible because they put the traveler off his guard and lure him into danger. The general rule upon this subject is thus stated by one of our textwriters: "Where a person is ignorant of the location of a crossing, or where the circumstances are such as to mislead him as to the necessity for looking or listening for the approach of a train, he cannot as a matter of law be said to be guilty of negligence per se for neglecting to do so."

*Id.,* 122 N.E. at 332.

A question of fact is created when a statutory violation may be the direct cause of an injury. *Schneider v. Wilson,* 521 N.E.2d 1341, 1345 (Ind.App.1988). The issue of causation is generally a question for the trier of fact, and is not answerable as a matter of law. *Id.* In all such cases the question of contributory negligence is one for the jury. *Indianapolis Union R. Co. v. Neubacher* (1896), 16 Ind.App. 21, 43 N.E. 576, 581.

None of the factual disputes noted above may be resolved by the trial court on summary judgment. Only a jury may do so. This case, in my opinion, requires a jury trial.

Accordingly, I would reverse and remand for a trial on the merits.